COHEN v. FARLEY.

(Supreme Court, Appellate Term. June 28, 1899.)

REAL-ESTATE BROKERS—COMMISSIONS.
    Where the owner of a lot, desiring to sell it, gave a broker a card describing the lot as 23 feet wide, and the broker in good faith found a person who, in reliance on the statement on the card, was able. willing, and ready to purchase at the price demanded, and the sale fell through because it was afterwards discovered that the lot was only 22 feet and 7 inches wide, the broker was entitled to a commission.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Michael Cohen against John F. Farley. From a judgment for costs in favor of defendant, plaintiff appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN, and LEVENTRITT, JJ.

Moss & Feiner, for appellant.

Redfield, Redfield & Lyden, for respondent.

FREEDMAN, P. J. The plaintiff brought this action for a commission, claimed by him to have been earned as a broker in procuring a purchaser for certain premises owned by the defendant. The material facts in the case are undisputed. The plaintiff was authorized by the defendant to procure a purchaser for certain premises owned by the defendant, for which the defendant agreed to pay the plaintiff the sum of 1 per cent. commission. To enable the plaintiff to effect a sale, the defendant stated to the plaintiff that the lot to be sold was 23 feet wide by 100 feet deep. He also gave to the plaintiff a card, signed by him, stating that the lot was for sale, that the size was 23 by 100, and upon the card was a map or diagram showing the adjoining streets, and upon which the dimensions of the lot were shown in figures to be 23 feet at each end and 100 feet in length. The plaintiff took the card to one Mayer, offered the lot to him, and subsequently introduced Mayer to the defendant, who agreed to accept the sum of $15,500 for the lot. Afterwards the plaintiff and the defendant met by appointment at the office of the defendant's attorney, a contract was drawn, and the plaintiff went with it to Mayer's office, who, upon reading it, discovered that the dimension of the lot as stated in the contract was but 22 feet and 7 inches in front, and refused to make the purchase unless the size was 23 by 100, as previously represented to him to be. It appearing that the defendant actually owned but 22 feet 7 inches in front, the sale was not made. It was conceded upon the trial that Mayer was able to make the purchase, and he testified that the only ground for his refusal to make the purchase was the fact that the lot did not contain the number of feet frontage that it had been represented to him to contain, viz. 23 feet. There can be no question but that the size of the lot was regarded as an important element in the contract between the plaintiff and the defendant, and that the plaintiff had a right to and did rely upon the statement made to him by the defendant, as well as that contained on the card, in obtaining a purchaser. The defendant testified that he used cards similar to the one given the plaintiff in advertising his lots for sale, and he thereby made the dimensions of the lot a material and essential part of his statements to induce purchasers to buy. Acting in good faith, and with no knowledge of the incorrectness of the statement, the broker found a purchaser for the lot, who, after examination, and also relying upon the statements contained on the card aforesaid, and believing the size of the lot to be 23 by 100, was able, willing, and ready to purchase at the price the defendant agreed to accept. The case of Diamond v. Hartley, 38 App. Div. 87, 55 N. Y. Supp. 994, is cited by the respondent as being similar to the one at bar.

An examination of that case shows an entirely different state of facts. In Diamond v. Hartley, supra, it did not appear that anything was said between the broker and the seller regarding the dimensions of the lot until the seller had been informed by the broker that a sale of the premises had been effected, and until the contract of sale was ready for execution. The attorneys for the purchasers then discovered that the dimension of the lot as contained in the abstract of title was 24 feet 7½ inches wide, while the contract stated it to be 25 feet wide, and the buyer thereupon refused to complete the purchase unless a corresponding reduction in price was made. Nowhere in the case does it appear that the seller did anything in any way to induce any one to become a purchaser. As stated in the opinion: "He made no representations for the purpose of inducing a sale, so far as appears by the record. No suggestion of the kind is made." He simply told the broker that he would sell his house and lot for the sum of $82,000, and the broker assumed to find a purchaser. In that case the court quoted with approval the case of Sibbald v. Iron Co., 83 N. Y. 378, where the court said: "If the efforts of the broker were rendered a failure by the fault of the employer, * * * if the latter [the buyer] declines to complete the contract because of some defect in the ownership of the seller, some defect which is the fault of the latter, then the broker does not lose his commissions." In the case at bar the defendant expressly stated to the broker that his lot was 23 by 100. Those dimensions were communicated to the proposed purchaser. Upon that statement the intended buyer relied, and by reason of its material variance from the representations made to induce the sale he refused to purchase. It surely was the fault—whether innocently or otherwise is immaterial—of the defendant, and the failure to complete the sale does not appear to be attributable to the plaintiff. Judgment must be reversed.

Judgment reversed; new trial ordered, with costs to the appellant to abide the event. All concur.