(157 App. Div. 855.)

SCHWEID et al. v. STORANDT.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

1. BROKERS (§ 60*)—RIGHT TO COMPENSATION—INVALIDITY OF CONTRACT.

Where a broker has procured a purchaser who is able and willing to buy the land at a price and upon terms satisfactory to the owner, although no enforceable contract has been entered into, and the sale there-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after fails through the fault of the owner, the broker is entitled to his commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

2. BROKERS (§ 62*)—RIGHT TO COMPENSATION—DEFAULT OF PRINCIPAL.

An owner of a block gave an exclusive agency to brokers for its sale at an agreed commission. Thereafter the owner, by mistake, informed the brokers that the block contained one more apartment than it actually did. On the strength of that statement the brokers procured a purchaser who was able and willing to buy at a price and upon terms satisfactory to the owner, although no enforceable contract was entered into. After discovering the misrepresentation as to the number of apartments, the purchaser refused to close the deal. Held, that the failure of the deal was due to the fault of the owner, and the brokers were entitled to their commission.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 62.*]

Foote, J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Bernard A. Schweid and another against Carl W. Storandt. Judgment for plaintiffs, and defendant appeals. Affirmed after reargument.

See, also, 155 App. Div. 947, 140 N. Y. Supp. 1144.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Frederick A. Mann, of Rochester, for appellant.

George A. Carnahan, of Rochester (Carnahan, Adams, Jameson & Pierce, of Rochester, of counsel), for respondents.

ROBSON, J. There is no controversy over the question of plaintiffs' employment by defendant as real estate brokers to sell certain real estate owned by defendant, known as the Berlin Block, situate in the city of Rochester, N. Y., and that, if plaintiffs procured a purchaser for such property at the price of $50,000 the defendant would pay them as their commissions the sum of 2½ per centum upon the purchase price. This is admitted by defendant's answer. Plaintiffs further allege that they did in fact procure and produce a purchaser ready, willing, and able to purchase said property at that price upon terms of payment thereof which were accepted by the defendant. The defendant in his answer denies this. The material question to be decided, therefore, is whether plaintiffs did in fact produce such purchaser.

[1] Plaintiffs did procure and submit to defendant a written paper signed by one A. William Black as follows: "Black, Elwood & McCarthy, A. William Black"—which was in form an offer to purchase the premises for $50,000, to be paid and secured as stated therein. Defendant accepted the offer in writing signed by him, but included in the acceptance two further provisions, that $1,000 be deposited "to bind the bargain, transfer to be made on or before March 28, 1912." While the offer appears in terms to be that of three persons, viz., Black, Elwood & McCarthy, when McCarthy's attention was called to

it by service upon him of defendant's acceptance thereof, he at once repudiated the offer as having been made or authorized to be made by him, and it is not claimed that he can be considered as a party thereto. Shortly thereafter, and on March 21, 1912, a meeting was had at which the defendant, one of the plaintiffs, A. William Black, Elwood, and one Louis Black were present. As a result of negotiations at that interview it was agreed that, as McCarthy was not bound as a party to the offer, Louis Black should take his place as a party to the deal; but Louis Black did not in fact sign the offer. The $1,000 required in defendant's acceptance was thereupon paid to him, the amount being furnished by the two Blacks and Elwood, and paid by the check of A. William Black. The date when the transaction was to be closed was also agreed upon.

At this point, if this were all of the transaction, it would seem to be clear that plaintiffs had procured and produced a purchaser willing to buy the property at a price and upon terms satisfactory to defendant; and the ability of these parties to perform is shown. On the face of the papers A. William Black and Elwood were bound by a written contract to purchase on the terms agreed; and it was further agreed that Louis Black was to be substituted in place of McCarthy as one of the purchasers, though not, perhaps, as pointed out by Mr. Justice Foote, actually a party to any written agreement to purchase, and for that reason, doubtless, his agreement would not be an enforceable one against him for the purchase of the property. But, if these parties were both able and willing to perform the terms of the agreement, then, of course, though all may not in fact have been bound by an agreement to purchase enforceable by defendant, yet, being both able and willing to purchase, if the sale did not in fact materialize, due to the after fault of the defendant or his refusal to comply with the terms thereof, the plaintiffs would still have completed their brokers' contract and earned their stipulated brokers' compensation. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 384, 38 Am. Rep. 441. The sale was in fact not consummated, and the refusal of the prospective purchasers to comply was, I think, due entirely to circumstances for which the defendant owner was solely responsible.

[2] The original brokers' contract described the property simply as the Berlin Block and its location; but it appears that a considerable part of the building was constructed for and used and let as apartments. Its apparent value for rental purposes depended to some extent upon the number of rentable apartments it had, and its investment value also depended upon the amount of rentals it produced. Some months after defendant made the brokers' contract with plaintiffs, and while they were engaged in their efforts to sell the property, the contract being still in full force, defendant furnished them information as to the number of apartments there were in the building and the sum for which they were separately rented. This information was embodied in defendant's presence from his dictation in a written statement prepared by one of the plaintiffs. The purpose for which this information was obtained and the statement prepared was known to defendant: i. e., that it was to be used by plaintiffs in negotiation

with prospective purchasers as a statement showing what the building, actually was. The effect of this transaction by defendant with the agents was, it seems to me, to enlarge to that extent the terms of the agency contract, and the representations thus made were thereafter to be treated and considered in relation to the original contract of agency, the same as if they had been actually included therein. The purpose for which the statement was to be used was recognized by defendant, and therefore plaintiffs had at least implied authority to use it as a representation made by defendant with like effect as though originally a part of the agency contract. If it had been contained in the original contract of agency, there could be little doubt that, if false, and the agent relying upon the truthfulness of the representation, and having secured an able and willing purchaser, who also relied on the truthfulness of the representations, and who, on learning their falsity, for that reason refused to purchase, the agent would have earned his commissions. Dotson v. Milliken, 209 U. S. 237, 28 Sup. Ct. 489, 52 L. Ed. 768.

Plaintiffs, using this statement for the purpose for which it had been prepared, showed it to the prospective purchasers, or some of them, before the offer to purchase was made, and Black at the meeting on March 21, 1912, above referred to, asked defendant if the statement had been made by his authority, and was, in effect, assured by him that such was the fact. The agreement to purchase, hereinbefore referred to, was then made, in apparent and warranted reliance on the truthfulness of the statement. It is admitted that this statement was in fact false, in that it represented there was one more apartment than the building actually contained, and the apparent rentals as stated therein were correspondingly increased by the amount of rental of that apartment. After the offer was accepted in the manner and form above described, the prospective purchasers ascertained the incorrectness of the statement. When the parties thereafter met at the agreed time and place to complete the transaction, the purchasers declined to complete the transfer, basing their refusal practically on two grounds, one of which was the misrepresentation in the statement above referred to. It is not necessary to refer to the other objection advanced by them, for the reason that its consideration as a ground upon which such refusal could properly be based was withdrawn by the court in his charge to the jury from their consideration. Both parties seem to have accepted the court's holding in this respect as correct, for no exception was taken to it, and no request to charge otherwise was made. The court further charged the jury that this misrepresentation, concededly made, and for which either the plaintiffs, or the defendant, were responsible, furnished sufficient ground for the purchasers' refusal to complete the transfer. He further left it to the jury to pass upon as a question of fact whether plaintiffs or the defendant were responsible for the misrepresentation, charging that, if the plaintiffs were responsible for it, then there could be no recovery in this action, but, if it was chargeable to defendant, then plaintiffs were entitled to their commissions. The finding of the jury in favor of plaintiffs is amply supported by the evidence.

It follows, if I am correct in my view of the law applicable to this case, that plaintiffs were not required to show that defendant had an enforceable contract with the purchasers, but that it was shown that they had fulfilled their contract with defendant by producing purchasers who were ready, able, and willing to buy the property on defendant's own terms, and that the sale was not completed for the single tenable reason that defendant had by material misrepresentation of the property, for which he alone was responsible prevented its actual consummation.

The judgment and order should be affirmed, with costs. All concur, except

FOOTE, J. (dissenting). Plaintiffs are real estate brokers. They bring this action to recover $1,250 as their commissions for effecting a sale of defendant's real property, called the Berlin Block, consisting of stores and apartments, at the corner of Monroe and Clinton avenues in the city of Rochester. The complaint alleges that plaintiffs were employed by defendant to sell this property, and that defendant agreed, if plaintiffs produced a sale thereof, he would pay them as their commission the sum of 2½ per cent. upon the purchase price; also that on or about March 19, 1912, plaintiffs procured and produced to defendant a purchaser ready, willing, and able to purchase said property at the price of $50,000 and upon certain terms of payment, which price and terms of payment were accepted by defendant. Defendant by his answer admits the employment, and by denial puts in issue the other allegations. The employment proved was in writing, dated April 20, 1911, and gave plaintiffs the exclusive right to sell this property for a period of one year, commission to be 2½ per cent. on the sale price, but no price or other terms of sale were stated in the writing.

The jury were instructed in effect that a contract of sale was effected through plaintiffs' agency between A. William Black and Frederick T. Elwood, as purchasers, and defendant, for the price of $50,000, which would have been binding and enforceable, except for the fact that during the negotiations plaintiffs had represented to these intending purchasers that the block contained 17 apartments to rent to tenants, when there were in fact but 16, and that the rentals were greater by the amount of the rent of one apartment than they in fact were. A written statement of the number of apartments and the amount of the rentals had been prepared by plaintiffs and submitted to the proposed purchasers during the negotiations, and it was not disputed that the statement was erroneous in the respects mentioned. Defendant had given to plaintiffs the information on which this statement was prepared by reading it from his books, and it was a disputed question as to whether the conceded error was due to defendant's mistake in reading the items to plaintiffs from his books, or plaintiffs' mistake in writing them down. No claim was made that this error, whether by one party or the other, was intentional. The jury were instructed that by reason of this error there was such a misrepresentation of the property that the purchasers were not bound to perform,

and were justified in their refusal to complete the purchase on that ground. They were further instructed that, if the error by which the number of apartments was misrepresented to the purchasers was that of defendant, plaintiffs were entitled to recover their commissions, but, if it was the mistake of plaintiffs, they were not entitled to recover anything. Thus it was ruled as matter of law that an enforceable contract for the sale of defendant's property had been made, and that these brokers had fully performed their contract, and were entitled to their commissions, unless the misrepresentation which relieved the purchasers from performance was plaintiffs' fault.

The sole question left to the decision of the jury was as to which of the parties was responsible for the mistake in the statement of the number of apartments and the amount of the rentals. Two principal questions are presented by this appeal: (1) Was any contract of sale made, to which defendant had agreed, which he could have enforced, but for the misrepresentations? (2) If there was an enforceable contract but for the misrepresentations, were plaintiffs entitled to recover an amount equal to their commissions in this action? There is also a further question as to whether defendant is in a position on this record to raise the questions which he urges on this appeal under the exceptions he took at the trial.

I am of opinion that no enforceable contract was made between defendant and any of the proposed purchasers. Plaintiffs, a few days prior to March 16, 1912, had interviews with A. William Black, Frederick T. Elwood, and John McCarthy, as a result of which on March 16, 1912, A. William Black prepared and delivered to plaintiffs an offer in writing to purchase defendant's property for the sum of $50,-000; $7,000 to be paid at the time the title was transferred, $3,000 within one year, secured by the promissory notes of purchasers at 3 to 12 months, $37,000 by taking the property subject to two mortgages then thereon, and the balance, $3,000, to be secured by mortgage of the purchasers payable in 5 years, with interest at 5 per cent., the offer to hold good until Tuesday, March 19th, at 6 p. m. This offer was addressed to plaintiffs and signed by A. William Black, as follows: "Black, Elwood & McCarthy, A. Wm. Black." Plaintiffs presented this writing to defendant, who on March 19th, at about 4:30 p. m. signed and delivered to plaintiffs the following, written below the written offer and on the same sheet:

"Acceptance, March 19, 1912, 4:30 P. M.

"I hereby accept the above offer, you to deposit $1,000 to bind bargain, transfer to be made on or before March 28, 1912.          Carl W. Storandt."

Three copies of the written offer and this acceptance were made, each of which were signed by defendant and taken by plaintiffs before 6 p. m. of March 19th, and one copy delivered to each of the proposed purchasers. At that time McCarthy learned for the first time that Mr. Black had assumed to use his name in making the written offer, and McCarthy then and ever after refused to be bound by the offer or to be a party to the purchase of the property. No proof was given on the trial that Black had received any authority to use McCarthy's name, and it was conceded upon the trial that McCarthy was not bound

by the written offer, and that defendant could not hold him liable thereon.

It is to be observed that defendant's acceptance is not an absolute one, but is made conditional upon the proposed purchasers agreeing to make a cash deposit of $1,000 and to consent that the transfer be made on or before March 28th. These modifications were never agreed to in writing by Black or Elwood, nor was any notice given to defendant that McCarthy's name had been signed to the offer by Black without authority, and that McCarthy had repudiated the offer.

On March 21st, at plaintiffs' request, defendant went with plaintiffs, or one of them, to the office of A. William Black, and there met A. William Black, Elwood, and Mr. Louis Black, the father of A. William Black. It was there stated to defendant that Mr. McCarthy "had got cold feet," and did not wish to go on with the transaction, and that Mr. Louis Black was to take his place. Defendant made no objection to this. A. William Black inquired of defendant whether he had furnished plaintiffs the information from which plaintiffs had made up a statement of the number of apartments in defendant's block and the rentals, and defendant replied that he had, that he took it off his books and gave it to plaintiffs. Then defendant stated that he was the principal owner of a corporation, the Monroe Theater Company, then occupying part of the Berlin Block, and stated that he thought the Monroe Theater Company was entitled to the first lease, and at a later meeting between the same parties on the same day a five-year lease to the Monroe Theater Company was prepared and signed by defendant in the name of that company, and defendant also signed in his own name a personal guaranty of the obligations to be assumed by the Monroe Theater Company. At one of these meetings on that day, but which one does not clearly appear, A. William Black drew his check to defendant for $1,000, which defendant accepted as the $1,000 to be paid to bind the bargain stated in his acceptance of March 19th, and at that time it was arranged that the parties were to meet on March 28th at the office of the attorneys for Messrs. Black to close the transaction.

The written offer and acceptance had thus been supplemented by an oral agreement by which Louis Black was to be substituted in place of McCarthy as one of the purchasers, and defendant's requirements that $1,000 should be paid to bind the bargain and that the matter should be closed on March 28th were agreed to. The closing of the transaction was deferred by mutual agreement until April 8th, when the parties met at the office of the attorneys for Messrs. Black. A day or two before this meeting defendant had notified the Messrs. Black and Elwood that the Monroe Theater Company withdrew from its offer to take a lease, and that he withdrew his offer to guarantee such a lease. Defendant attended the meeting of April 8th, with his counsel, with a deed of the property executed and ready for delivery, and with certain other documents necessary to enable him to give the title which he was to furnish; but Messrs. Black and Elwood refused to complete the transaction on two grounds: (1) Because defendant had withdrawn the offer of the Monroe Theater Company to take a

lease; and (2) because of the misrepresentations as to the number of apartments and the rentals.

It clearly appears from the testimony that the purchasers refused to consummate the transaction, unless defendant would have the Monroe Theater Company take a five-year lease of a part of this block, which he should personally guarantee, and make a reduction in the price of the block of about $2,500 on account of its containing one less apartment than had been represented to them. The purchasers' attorneys had also raised some objections to defendant's title, but no consideration was given to the question as to whether the papers which defendant's attorneys had there present ready for delivery were sufficient to show good title. As defendant was unwilling to comply with the purchasers' other demands, the parties separated, and shortly thereafter defendant began an action for specific performance against the two Blacks, Elwood, and McCarthy, which was afterward discontinued.

It is apparent that Mr. Louis Black could not be held by defendant to performance of any contract to purchase. He signed no agreement in writing, nor was one ever signed in his name. An oral agreement for the purchase of land is not enforceable, because of the statute of frauds, which requires such agreements to be in writing. But A. William Black and Elwood could not be held liable alone, and compelled to perform the contract as if they were the only purchasers. They had never agreed to purchase the property and assume the obligations for the purchase price, except in association with others. Their written offer was to purchase with McCarthy, and they consented that Louis Black be substituted for McCarthy, and to purchase with Louis Black. Moreover, defendant has never agreed to accept A. William Black and Elwood as purchasers, and to take their promissory notes and mortgage for the part of the purchase money not to be paid in cash. It was incumbent upon plaintiffs to show that they had made an enforceable contract, or that they had secured a purchaser or purchasers for the property for the price and upon terms satisfactory to defendant, and that the sale was not completed because defendant refused to perform. Platt v. Kohler, 65 Hun, 557, 20 N. Y. Supp. 547; Alt v. Doscher, 102 App. Div. 344, 92 N. Y. Supp. 439, affirmed 186 N. Y. 566, 79 N. E. 1100; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441. It was the law of the case that the proposed lease to the Monroe Theater Company, to be guaranteed by defendant, was no part of the contract of sale, for the jury were instructed that the talk about this lease was an after consideration, and that the purchasers could not require defendant to make it. Hence, if there had been no misrepresentations as to the number of apartments, still there was no contract which defendant had agreed to, either orally or in writing, which was enforceable by him against any of the proposed purchasers.

As there was no enforceable contract to which defendant had agreed, and no proposed purchaser who was ready and willing to take the property for a price and on terms which defendant had expressed his willingness to accept, plaintiffs failed to perform their contract as brokers and were not entitled to commissions as upon a sale effected by

them. Plaintiffs' contract of employment was made in writing on April 20, 1911. It gave them the exclusive right to sell this real property of defendant for a period of one year from that date. The writing did not contain any description of the property, except its location and street number, nor is it claimed that any representations were then made to plaintiffs by defendant as to the number of apartments or the rentals. The negotiations to sell the property to Black, Elwood & McCarthy were had nearly a year after the plaintiffs' employment, and the statement as to the number of apartments and rentals which plaintiffs submitted to these purchasers bears date February 28, 1912, and we may assume was made on that date. What the plaintiffs un-. dertook to do was to sell the property as it was and at a price satis-‡ factory to defendant. Had the defendant misrepresented the property to them at or before the time they made their contract with him to sell it as brokers, then they might have ground for complaint, if they entered upon the performance of their contract relying upon those representations and could show that they had been damaged on account thereof; but here their contract was to sell the block as it was, without reference to the number of apartments .or the amount of the rentals. It is a performance of that contract alone which would entitle them to compensation in the way of commissions. A misrepresentation, if one was made to them by defendants in February, 1912, as to the number of apartments in the block, was no part of their contract of employment, nor did it excuse performance on their part. If it affords them any cause of action for damages, the damages certainly cannot be based upon the claim that it prevented them from performing their contract. The rule undoubtedly is that, if the owner prevents the broker from earning his commissions, it is a waiver of full performance of the broker's contract, and he is entitled to recover as if he had performed; but here the brokers' contract related to the property as it actually was, not as it was represented to be nearly a year later, and there is no proof that plaintiffs' proposed purchasers were ever willing to buy this property at $50,000, which was defendant's price, with the number of apartments it actually had. On the other hand, the evidence shows that they were unwilling to pay that price for the property. The mistake in stating the number of apartments, if it was defendant's, did not interfere with plaintiffs' performance of their contract. They were still at liberty to find a purchaser for the block as it was, with 16 apartments, at defendant's price of $50,000, and thus earn their commissions.

The cases of Glentworth v. Luther, 21 Barb. 145, Lewis v. Mansfield Grain & El. Co. (Tex. Civ. App.) 121 S. W. 585, Gillespie v. Dick (Tex. Civ. App.) 111 S. W. 664, and Hugill v. Weekley, 64 W. Va. 210, 61 S. E. 360, 15 L. R. A. (N. S.) 1262, were all cases where formal written contracts of sale were entered into between the owner and the purchaser, valid and enforceable on their face, but which could not be enforced because of false and fraudulent representations made by the owner to the purchaser to induce the making of the contract. The case of Sotsky v. Ginsburg, 129 App. Div. 441, 114 N. Y. Supp. 114, is a case where the broker procured a purchaser ready and will-

ing to purchase upon the owner's terms, but before the execution of formal contract the owner refused to perform, except at an advanced price. The cases of Hess v. Investors' & Traders' Realty Co., 67 Misc. Rep. 390, 123 N. Y. Supp. 243, and Dotson v. Milliken, 209 U. S. 237, 28 Sup. Ct. 489, 52 L. Ed. 768, are cases where the owner's misrepresentations as to his property were made to the broker at the time of his employment, and hence entered into his contract of employment. The distinction between these cases and the case before us is apparent, and neither of them is an authority to the contrary of the views of the present case already stated.

. If I am right in the conclusion that no contract of sale was negotiated by plaintiffs to which defendant had agreed, and which but for the misrepresentations as to the number of apartments he could have enforced, then the case falls within the rule laid down in the cases of Curtiss v. Mott, 90 Hun, 439, 35 N. Y. Supp. 983, Diamond & Co. v. Hartley, 38 App. Div. 87, 55 N. Y. Supp. 994, and 47 App. Div. 1, 61 N. Y. Supp. 1022, Hausman v. Herdtfelder, 81 App. Div. 46, 80 N. Y. Supp. 1039, Keough v. Meyer, 127 App. Div. 273, 111 N. Y. Supp. 1, and Davis v. Gottschalk (Sup.) 141 N. Y. Supp. 517, to the effect that, where the owner's misrepresentations to the purchaser in reference to the property lead to a refusal of the purchaser to consummate a sale, the broker has not earned his commissions or performed his contract, where the misrepresentations are no part of the broker's contract of employment.

. At the close of plaintiffs' case, defendant's counsel moved for a nonsuit, on the ground that plaintiffs had failed to establish a cause of action, and on the ground that it did not appear that the offer to purchase the property had been signed by all the proposed purchasers, or by any one in their behalf. The motion was denied, and an exception taken. At the close of all the evidence defendant's counsel moved for a nonsuit and a direction of a verdict on the same grounds, among others, which motion was denied, and defendant excepted. Thereupon plaintiffs' counsel moved for a direction of a verdict in favor of plaintiffs, and before the court had ruled upon that motion defendant's counsel asked to go to the jury upon all the facts in the case. For the reasons stated, I am of opinion that defendant's motion for a direction of a verdict should have been granted, and I think the exception to the denial of this motion was not waived by the request, subsequently made, that the questions of fact should be submitted to the jury, in view of the fact that this request was made pending the consideration of plaintiffs' motion for a direction of a verdict.

Defendant's counsel also requested the court to charge that, if Louis Black could not be held liable, then there was no contract. This request was refused, and defendant excepted. I think this exception was well taken, and that upon these exceptions defendant was entitled to have his motion to set aside the verdict and for a new trial granted by the court.

It is suggested in the prevailing opinion that misrepresentation by defendant to plaintiffs as to the number of apartments may be treated as a modification of plaintiffs' contract of employment. I think it

may not be so treated as matter of law. It was not so treated at the trial, and no such question was submitted to the jury, nor has it been suggested by counsel. This misrepresentation was treated at the trial as an unintentional one, and a mere mistake. If it had the effect to modify the contract between the parties, it would need to be found by the jury that the parties so intended. It may well be that the parties would have had more evidence upon the question of intention, if that question had been raised at the trial.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

### SHEPARD v. PENNSYLVANIA R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

Appeal from Trial Term.

PER CURIAM. Judgment and order affirmed, with costs.