[Civ. No. 4525. Second Appellate District, Division Two.—May 3, 1927.]

L. M. FORD, Respondent, v. H. H. COTTON, Appellant.

[1] BROKER'S COMMISSIONS—SALE PRICE—DISCREPANCY AS TO ACREAGE.—Where a seller authorizes an agent to sell land containing a certain number of acres, more or less, for a stated sum, and the agent produces a purchaser who is able, ready, and willing to purchase the land at a specified price per acre which, if the tract contains the acreage stated in the brokerage contract and which the seller reaffirms at the time he and the prospective buyer

---

1. Right of broker to commissions where sale fails because of inaccuracy of owner's representations, note, 15 L. R. A. (N. S.) 1262.

are brought together will net the seller the total price stated in the brokerage contract, the fact that a discrepancy in the acreage as stated by the seller results in a selling price less than that stated in the brokerage contract will not result in a failure of the agent to procure a purchaser at the price fixed in his contract, and thus deprive him of his commission, upon the failure of the seller to consummate the deal.

[2] ID. — PERFORMANCE OF CONTRACT—SUFFICIENCY OF FINDINGS.—In the action to recover such broker's commission, the trial court having found that plaintiff, acting under his brokerage agreement, brought defendant into immediate touch with a ready and willing purchaser, able to buy at defendant's price and on terms acceptable to defendant, and did thus procure for defendant a *bona fide* purchaser at a price and on the terms and conditions prescribed in the brokerage contract, and that the arrangements made for the deferred payments were "suitable" within the contemplation of the brokerage contract, such findings were sufficient to support the judgment in favor of plaintiff, even though the court did not make a specific finding as to each one of the details agreed to be embodied in the contract which was to have been prepared between defendant and the purchaser, but which was never completed due to the act of defendant in selling the property to others.

[3] ID.—SUITABLE ARRANGEMENTS—ISSUES—FINDINGS.—In such action, the brokerage contract having provided that the terms as to the balance of the purchase price, over and above a specified cash payment, were to be "suitably" arranged, and the answer of the defendant having averred that the terms as to such balance were never suitably arranged between himself and the prospective purchaser, the finding by the trial court that the terms were agreed upon and were "suitable" constituted a finding of an ultimate fact; and by that finding the court in effect found and concluded that contradictory probative declarations relied on by defendant were untrue.

[4] ID.—WHEN COMMISSION EARNED—ABSENCE OF WRITTEN CONTRACT WITH PURCHASER.—A written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready,

---

3.  See 24 Cal. Jur. 970.

4.  When broker entitled to commissions, notes, 28· Am. St. Rep. 546; 139 Am. St. Rep. 225. See, also, 4 Cal. Jur. 583; 4 R. C. L. 310. Performance by real estate broker of contract to find purchaser, note, 44 L. R. A. 593. See, also, 4 R. C. L. 303. Necessity of securing written contract from purchaser to entitle real estate broker to commissions, note, 46 L. R. A. (N. S.) 129. See, also, 4 R. C. L. 306.

willing, and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price.

(1) 9 C. J., p. 627, n. 86.   (2) 9 C. J., p. 663, n. 81.   (3) 38 Cyc., p. 1981, n. 58, 59.   (4) 9 C. J., p. 624, n. 68.

APPEAL from a judgment of the Superior Court of Los Angeles County. Thos. O. Toland, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. G. Van Pelt, Loren O. Crenshaw, Victor E. Shaw and Hewlings Mumper for Appellant.

Goudge, Robinson & Hughes for Respondent.

JOHNSON, J., *pro tem.*—This is an action, tried without a jury, to recover brokerage claimed by plaintiff under a contract with defendant reading as follows:

"Los Angeles, California,
"April Third, 1922.
"Mr. L. M. Ford, 1023 Chapman Bldg., Los Angeles, Calif.
"Dear Sir: In the event of your being able to negotiate a sale of 73 acres of land, more or less, belonging to H. H. Cotton, *et al.*, located:

"Immediately north of Wilshire boulevard beginning at a point on Wilshire boulevard and Preuss road, running in an easterly direction to a point on Wilshire boulevard to the beginning of the property sold to Barman and others, being a part of subdivision of a portion of Rancho Rodeo de Las Aguas, in the city of Beverly Hills, for the sum of one hundred seventy thousand ($170,000.00) dollars; on terms of $25,000.00 cash and the balance to be suitably arranged, I hereby agree to pay you the sum of 5% commission on the sale price of $170,000.00, payable out of the first payment. Subject to any arrangement Ford may have had with C. C. C. Tatum.

"Yours very truly,
"H. H. COTTON."

Plaintiff had agreed that C. C. C. Tatum should have one-third of the commission, to be paid directly by the defendant to Tatum, and this is the arrangement to which the contract alludes.

Judgment was rendered in favor of plaintiff for $5,666.66, being two-thirds of the agreed brokerage, and from that judgment defendant prosecutes this appeal.

Before he obtained the brokerage contract, plaintiff had presented the property to a real estate operator named Allen Ratteree; and after the brokerage agreement was signed, plaintiff on the same day brought defendant and Ratteree together at the latter's office, in order that they might conduct their own negotiations. No written agreement of sale was ever made; but plaintiff relies upon his production of a purchaser whom he brought directly to defendant, and who in personal negotiations came to an oral agreement with defendant which, notwithstanding conflicting evidence, the court has found was made on the day of that meeting and on the following day repudiated by defendant. All parties agree that, as a result of that meeting at Ratteree's office, instructions were given to have a written contract prepared and submitted as soon as possible by Ratteree's attorney, F. Walton Brown, who was present at the conference and made notes of the details to be incorporated in a formal agreement. Before such agreement could be submitted, however, defendant gave notice next day that he had sold to other parties, and hence could proceed no further with Ratteree. Thereafter defendant denied plaintiff's right to any commission, and in consequence this action was instituted.

The attack of appellant is upon certain of the court's findings, which in general are based on evidence given on behalf of the plaintiff. The court found that plaintiff procured a purchaser at the price and on the terms and conditions stated in the brokerage agreement. It found also that the broker brought defendant and Ratteree together, and that Ratteree thereupon offered to defendant to purchase at a price and on the terms and conditions specified in defendant's agreement with plaintiff; and that it was agreed between defendant and Ratteree that the balance of the purchase price over the cash payment of $25,000 should be paid in five equal annual installments, payable respectively

in one, two, three, four, and five years from the time of the cash payment, with interest at seven per cent per annum, payable semi-annually. The court found further that the arrangement made was "suitable," within the meaning of the brokerage contract, and that defendant agreed to enter into a formal written agreement of sale, to be prepared by Ratteree's attorney in accordance with the terms of the understanding reached, but that before such written agreement was completed, defendant refused to deal further with Ratteree upon any terms or conditions.

It is contended that there is no evidence to support a finding that there was any offer or agreement on Ratteree's part to buy at the price or on the terms and conditions named in the brokerage contract; but that, on the contrary, the price and terms discussed varied from the price, terms, and conditions originally prescribed, and that the conference was concluded without reaching any definite arrangement, though with an understanding that discussion might be resumed when the parties had before them the draft to be prepared by Ratteree's attorney. In other words, the defendant insists that the negotiations never went far enough to assume a concrete form. It is of course true that such was the testimony of defendant and his witness Tatum, who appears to have been interested in the syndicate which bought the property from defendant; but the findings show that the court gave credence to the testimony of plaintiff and his witnesses. The sole question is, then, whether or not there is evidence justifying the finding that the minds of the negotiators met upon a sale at the price and on the terms and conditions stated in the agreement between plaintiff and defendant, with "suitable" arrangement as to deferred payments.

There were present at the conference at Ratteree's office, not only the plaintiff, the defendant, and Ratteree, but also Ratteree's attorney, F. Walton Brown, Thomas A. Hazelton, one of Ratteree's salesmen, and C. C. C. Tatum, all of whom, except defendant and Tatum, were called as witnesses for plaintiff. The brokerage agreement described a tract of land said to contain 73 acres, more or less, and the price named was $170,000, $25,000 payable in cash and the balance as might be agreed. Ratteree was proposing to buy for purposes of subdivision and sale in lots; and according to the

testimony of plaintiff and his witnesses, the discussion at the meeting in reference to price turned upon the question of the clear acreage left after excluding land subject to rights of way or dedicated for streets, reference being made to a map or blue-print produced at the time and now annexed to the transcript as part of the record on this appeal. The 73 acres, more or less, belonging to the defendant Cotton are represented in the brokerage contract as comprising a tract "immediately north of Wilshire boulevard, beginning at a point on Wilshire boulevard and Preuss road," from which point the first call runs easterly to the Barman property. This language would imply that the tract lay to the north of the northerly property line of Wilshire boulevard, with the point of beginning at the intersection of such northerly property line with the easterly property line of Preuss road, and that the land traversed by Wilshire boulevard and Preuss road was excluded in computing the acreage. The tract had not been actually surveyed; and when the defendant and Ratteree met, Ratteree testified that he stated to the defendant that he was willing to pay $170,000 if the tract itself had approximately 70 acres, but that he would not pay for land dedicated for streets or subject to rights of way. Accordingly, he proposed to take the property at its net acreage and pay $2,250 an acre for the easterly portion, marked off on the map before them and comprising about two-thirds of the tract, and $2,500 an acre for the residue. Ratteree testified further that defendant said the price would perhaps run $1,500 or $2,000 over $170,000 because of a somewhat greater acreage than was being reckoned upon, and that in fact the total price would come to $171,500, or $172,000. Ratteree also said that in response to that statement of defendant he himself answered: "All right, if you have got that amount of acreage in there, that is satisfactory to me." Mr. Brown corroborated Ratteree, stating that defendant declared that on the basis proposed by Ratteree there would be something over 73 acres, and that the total price would therefore be a little over $171,000; and that Ratteree thereupon expressed willingness to pay that price. Further corroboration is found in evidence given by plaintiff in his direct examination, where he testified as follows: "The subject of price was discussed at the conference. The price mentioned was $170,000 at first, and

Mr. Ratteree said it was all right. Mr. Cotton said, 'Well, if that is what it figures out'; he said, 'No, it figures a little bit more, doesn't it?' We added up the acreage that was shown on the map and multiplied them out and it came to $171,250. We had some little argument about it and I was prepared, if it came to a showdown, to give them that out of my commission to let the deal go through. Mr. Ratteree said, 'Well, I am buying this by the acre, and if there is two or three more acres there it don't make any difference,' he said, 'if it is there.' " Again, upon cross-examination, plaintiff reiterated this testimony, saying: "We figured the price at $170,000, based upon Mr. Cotton's representation that there were so many acres there. When we got to Mr. Ratteree's office and had the map before us, we took down the number of acres in each individual block to the point where the line was drawn. I added that up in a little book . . . figured it out to what was supposed to be 1/1000 of an inch, according to the survey there made, and it came to $170,200. They said, 'How about the prices?' Mr. Cotton says, 'Don't it go a little more than that?' And I figured it definitely at $171,250. There was $1,250 difference. Mr. Ratteree said, 'A few more acres, more or less, don't make any difference to me. If the land is there, I will pay for it."

It is thus manifest that the court based its finding upon evidence before it, which in substance showed that the defendant represented that he had approximately 73 acres net, or at any rate sufficient land to produce at the rate designated something in excess of $170,000.

As to terms and conditions, there is evidence that the parties agreed upon a cash payment of $25,000, to be made on delivery of deed, and deferred payments in equal annual interest-bearing installments, as found by the court. While the court has not made a further finding in reference to deferred payments, the evidence on behalf of plaintiff is to the effect that an agreement was reached that the deferred payments were to be evidenced by Ratteree's promissory notes secured by a deed of trust, which was to contain certain provisions for release of lots of the contemplated subdivision upon payment of certain fixed amounts. The record contains evidence also that Ratteree offered to pay a deposit on the spot, and to deposit the balance of the cash payment

in escrow with instructions to pay the amount to defendant when title should pass, but that defendant stated that that matter could wait until the contract was signed. According to Ratteree, defendant said in reference to the formal contract: "You gentlemen go and draw up your papers and get them ready tomorrow, if you can"; and promised to close then or the following day, as soon as the papers could be gotten ready, and in the meantime to send Mr. Brown an exact legal description of the property. Brown states also that as defendant was leaving the conference he remarked: "Well, we have made a deal—submit your contract to me as soon as it is drawn up and close it up." Before the parties separated instructions had been given to Brown to prepare a formal agreement embodying the terms arrived at in his presence, and Brown testified that he had his notes taken during the conference, and that on the following day there was sent to his office a description of the property by courses and distances, which defendant had promised to procure from his engineer. Brown started to draw the formal agreement, but had not finished it when he learned that defendant had disabled himself from the performance of any agreement with Ratteree.

[1] The description of the engineer places the point of commencement at the intersection of the center line of Preuss Road (60 feet wide) and Wilshire Boulevard (100 feet wide), and gives the area of the tract as 73.2733 acres, less portions of Preuss Road and Wilshire Boulevard, amounting to 3.5355 acres dedicated to Los Angeles County for road purposes. Using these figures in connection with the map in evidence, appellant argues that the price at the rate offered by Ratteree would fall below $170,000, and that consequently plaintiff's purchaser did not agree to buy at defendant's price. There is no evidence, however, that there had been any actual survey by the engineer, or that the tract did not in fact contain approximately 73 acres net; and it must be remembered that at the conference, according to testimony relied upon by the court, defendant was representing himself as owner of enough land to produce $170,000 or somewhat more, and that Ratteree expressed his willingness to pay that gross amount, or even $1,500 or $2,000 more, for the net quantity of land which defendant declared he would be able to convey. Under the circumstances it

may not be said that the alleged discrepancy in net acreage resulted in failure of the broker to produce a purchaser at the price fixed for the tract of approximately 73 acres. If the net acreage was as represented by defendant, he could have had at least $170,000 from Ratteree; and defendant's refusal to close the sale with Ratteree cannot deprive the broker of his commission upon the ground here urged, that the purchaser had not agreed to pay defendant's price of $170,000. In *Cohen* v. *Farley*, 28 Misc. Rep. 168 [58 N. Y. Supp. 1102], the broker was held entitled to his commission, where the owner of the lot, desiring to sell, gave the broker a card describing the lot as twenty-three feet wide and the broker in good faith found a person who, in reliance upon the statement on the card, was able, ready, and willing to purchase at the price demanded, but who withdrew when it was afterward discovered that the lot was only twenty-two feet and seven inches wide. See, also, *Schweid* v. *Storandt*, 157 App. Div. 855 [143 N. Y. Supp. 161], affirmed, 217 N. Y. 637 [112 N. E. 1075], and *Sokolski* v. *Bleistift*, 129 N. Y. Supp. 26.

[2] While the court did not make a specific finding as to each one of the details agreed to be embodied in the contract which Ratteree's attorney was to prepare, yet there is the essential finding that plaintiff, acting under his brokerage agreement, brought defendant into immediate touch with a ready and willing purchaser, able to buy at defendant's price and on terms acceptable to defendant, and did thus procure for defendant a *bona fide* purchaser at the price and on the terms and conditions prescribed in the brokerage contract, and that the arrangement made was "suitable" within the contemplation of the contract. These findings, under the record before us, are sufficient to support the judgment.

[3] The defendant in his answer averred that the only terms and conditions on which he and Ratteree had agreed were as to the initial payment of $25,000, and that the terms as to the balance of the payments were never suitably arranged between himself and Ratteree. Upon conflicting evidence the court finds specifically, however, that "It is not true that the only terms and conditions relative to said sale upon which the minds of the defendant and said Allen Ratteree met was upon the initial payment; that it is not

true that the terms as to the balance of the payments were never suitably arranged between plaintiff and said Allen Ratteree." In view of the language of the brokerage contract and the issues tendered by plaintiff's answer, the finding to the effect that the terms were agreed upon and were suitable is to be treated as a finding of an ultimate fact. Since the court found the ultimate fact in favor of plaintiff, it in effect found and concluded that contradictory probative declarations relied on by the defendant were untrue. (*Tower* v. *Wilson*, 45 Cal. App. 123, 124 [215 Pac. 542, 543].)

[4] The law governing a broker's right to his commission where he brings buyer and seller together and leaves them to make their own engagement has been frequently expounded by our courts, and is thus stated in the late case of *Twogood* v. *Monnette*, 191 Cal. 103, 107: "It is also established law in this state that a written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price. (*Gunn* v. *Bank of California*, 99 Cal. 349 [33 Pac. 1105]; *Merwin* v. *Shaffner*, 31 Cal. App. 374 [160 Pac. 684].)" The same rule has been applied still more recently in *Contant* v. *Wallace*, 62 Cal. App. 768 [217 Pac. 1081], *Umphray* v. *Hufschmidt*, 73 Cal. App. 140 [238 Pac. 749], *Frank Meline Co.* v. *Kleinberger*, 77 Cal. App. 193 [246 Pac. 136], and *Bail* v. *Glantz*, 78 Cal. App. 49 [248 Pac. 258].

The judgment is affirmed.

Craig, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1927.