[L. A. No. 8883. Department One.—December 30, 1927.]

F. BRADLEY COULTER, Appellant, v. JULIA C. HOWARD, Respondent.

Tanner, Odell & Taft for Appellant.

N. B. Nelson for Respondent.

PRESTON, J.—This is an action by a duly licensed real estate broker for a commission of five per cent upon the purchase price named in a certain real estate transaction. Defendant had judgment against plaintiff, from which she has taken this appeal.

The only serious question in the case and the only one which need be discussed is the contention of appellant that certain material findings are, as a matter of law, contrary to the evidence. The substance of the findings in question is as follows: First, that no written evidence of the employment of plaintiff by defendant is shown and the statute of frauds is therefore not satisfied and, second, that appellant failed to produce a purchaser ready, able, and willing who offered to buy defendant's property upon the terms imposed by her. Our investigation of the record convinces us that appellant is correct in her contention and that said questioned findings are entirely without support in the evidence, this appearing as a matter of law.

The facts are substantially as follows: Defendant, a widow, owned a lemon orchard of twenty acres near Santa Monica in Los Angeles County, which she was willing to sell, with certain reservations and upon certain terms of payment, at a purchase price of $3,000 per acre, or a total of $60,000. Plaintiff, a licensed broker, was interested under a verbal contract with her in finding a purchaser on said terms. Pursuant to this verbal arrangement plaintiff found a pro-

spective purchaser in one B. O. Driver, which fact was communicated to defendant. Later, and on June 21, 1923, one Ray Howard, the son of defendant, assumed the authority to act for his mother and attempted to give in his own name to plaintiff a three-day listing contract for sale of said property on said terms, promising in consideration of the services of plaintiff to pay her a five per cent commission on the selling price. Accordingly, within the time limit specified, plaintiff induced said B. O. Driver to make an offer in writing to purchase said property at said price of $60,000, payable in installments on certain specified dates. This offer was drafted at the First National Bank of Santa Monica by some officer of the bank. The bank was to act as escrow party for both vendor and vendee in the contemplated real estate transaction. Later, and on the twenty-second day of June, 1923, defendant herself appeared at said bank and also signed a separate written offer to sell said property, specifying the terms of sale. In so far as said terms are here material they were as follows:

"Escrow Instructions.

"Santa Monica, Cal., June 22, 1923.

"The First National Bank in Santa Monica, Cal.:

"I will hand you deed executed by Julie C. Howard, a widow, to Bert O. Driver of Lots 7-8-9-10. . . . Reserving all subterranean waters on Lots 9 and 10 which you are authorized to deliver to buyer or h—— representatives, upon payment to you by July 1st, 1923, for account of parties executing the instrument the sum of $10000 ½ to be from which you may deduct your Escrow dep. by charges and charges for usual form guarantee 5-6/25/23 limiting liability to $60,000 and from which you may also pay all incumbrances on said property. Procure mtg. for $50,000 payable $5000 on or before 90 days—Balance in 4 equal annual payments. . . . This sale is made subject to satisfactory conditions and arrangements being made with the City of Santa Monica in regards to domestic water and sewer service. . . . Pay F. Bradley Coulter a commission of $ 5% at close of escrow but only out of funds then due and payable to me out of this escrow. . . . Time is declared to be the essence of these instructions. If you are unable to comply with these instructions within the time

specified, said instruments shall be returned to me on my written demand; but in the absence of such demand you will proceed to comply with these instructions as soon as possible thereafter. . . . ''

The prospective purchaser paid, as hereinafter explained, $500 to the escrow bank pursuant to his offer and thereafter proceeded to make his arrangements with the city of Santa Monica for city water and sewerage connections for said property. These arrangements were satisfactorily completed with said city on June 25, 1923. From and after the completion thereof the evidence shows that the purchaser was ready, willing, and able to complete the purchase of said property and thereafter, to wit, on or about the twenty-seventh day of June, 1923, having just learned from inspection of the escrow offer signed by defendant that said document had been interlined to require the payment of $5,000 on June 25, 1923, he immediately gave a check to said bank for $4,500, which completed said $5,000 payment. His check for $4,500 was introduced in evidence. It bears date of June 27, 1923, and is marked paid on June 28th. Defendant, however, having learned on or about said twenty-fifth day of June that the purchaser had not made the additional payment, proceeded with the intention of repudiating the transaction with him and on or about June 27, 1923, made a contract with one Blair for the sale of said property at a purchase price of $64,000. Thereafter, and on the twenty-eighth day of June, defendant called at said bank and signed and delivered to it a writing in the words and figures following:

'' . . . Santa Monica, Cal., June 28, 1923.
''The First National Bank in Santa Monica, Calif.

''Gentlemen: Regarding the escrow in your bank concerning Lot 7-8-9 & 10. . . . Mr. Driver, purchaser, we hereby notify you to cancell the escrow and Return Mr. Driver the $500.00 he has deposited, owing to his failure to comply with the conditions we specified regarding the depositing $4500.00 additional money by Monday, June 25.

''Yours truly,
''JULIE C. HOWARD.''

Later and on July 10, 1923, the money deposited by Mr. Driver was refunded to him and the sale to him was, of course, never completed. The further evidence in the case

and the contentions of the parties with respect thereto will be discussed in connection with the law points involved herein.

The first question to be answered is: Did the writing signed by defendant directing the escrow party to pay to plaintiff a five per cent commission at the close of the escrow and out of the funds then due and payable to her, when taken in connection with the facts shown, satisfy the statute of frauds? It must be noted in this connection that a verbal contract of employment was made between defendant and plaintiff. It must also be noted that a written contract executed by the son of defendant was made with plaintiff and under the evidence there is no escape from the conclusion that defendant well knew of its contents and acted pursuant to its terms in signing at the bank and in the presence of a representative of defendant the escrow offer to sell above noted. These escrow provisions followed substantially the terms embodied in the writing executed by defendant's son, written authority in whom she disclaimed. In the light of these facts the provision in the escrow offer must be held to be a "note or memorandum" of the contract which is all the law requires (Civ. Code, sec. 1624; Code Civ. Proc., sec. 1973).

We agree fully with the language of *Muir* v. *Kane*, 55 Wash. 131 [19 Ann. Cas. 1180, 26 L. R. A. (N. S.) 519, 104 Pac. 153], as follows: "The moral obligation to pay for services rendered as a broker in selling real estate under an oral contract, where the statute requires such contract to be in writing, is just as binding as is the moral obligation to pay a debt that has become barred by the statute of limitations; and there is no reason for holding that the latter will support a new promise to pay while the former will not. There is no moral delinquency that attaches to an oral contract to sell real property as a broker. This service cannot be recovered for because the statute says the promise must be in writing, not because it is illegal in itself. It was not intended by the statute to impute moral turpitude to such contracts. The statute was intended to prevent frauds and perjuries, and, to accomplish that purpose, it is required that the evidence of the contract be in writing; but it is not conducive to either fraud or perjury to say that the services rendered under the void contract or voluntarily will support

a subsequent written promise to pay for such services.'' (See, also, *Carrington* v. *Smithers*, 26 Cal. App. 460, 463, 464 [147 Pac. 225].)

In this connection the language of *Johnson* v. *Krier*, 59 Cal. App. 330, 332 [210 Pac. 966], is in point, to wit: ''In the present case the agreement to pay commission was not reduced to writing before the rendition of the services by the plaintiffs, but after plaintiffs had procured the purchasers the oral agreement was ratified in writing and so the bar of the statute of frauds was removed.'' In said cause the defendant had written on the back of the contract of sale and purchase the following words: ''I hereby agree to pay Johnson and Temple a commission of $2,000 for the making of the within sale (dated and signed).'' (See, also, Civ. Code, secs. 2310 and 2311.)

The question here under consideration was not fairly involved in the case of *Irwin* v. *Klimper*, 56 Cal. App. 434 [205 Pac. 714]. Neither do we consider what is there said to be necessarily opposed to the holding here announced.

■ Respondent next asserts that conceding the writing signed by her to be sufficient under the law, nevertheless the sum was not to be paid until the close of the escrow and then only out of funds payable to her thereunder. This would undoubtedly be true if she were free from fault in the premises (*Jennings* v. *Jordan*, 31 Cal. App. 335 [160 Pac. 576], and *Brion* v. *Cahill*, 34 Cal. App. 258, 262 [165 Pac. 704].) But prior to the time provided for completion of the transaction, respondent not only sold the property to another with intent to repudiate the transaction with Mr. Driver, but she actually served notice of attempted cancellation of the whole transaction. The law will not lend an ear to such contention on her part; therefore, the payments provided will be held due as of the date of repudiation. The law requires of the vendor good faith and the doing of no intentional act to discourage, embarrass, or prevent the completion of the purchase. (See *Realty Bonds etc. Co.* v. *Point Richmond etc. Co.*, 171 Cal. 238 [152 Pac. 433]; *Ratzlaff* v. *Trainor Desmond Co.*, 41 Cal. App. 586 [183 Pac. 269]; *Miller* v. *Lerdo Land Co.*, 52 Cal. App. 662, 677 [199 Pac. 1073].)

■ The last contention of respondent is that plaintiff failed to produce within the time prescribed, a purchaser

ready, able, and willing to carry out the transaction upon the terms imposed by her. The first point stressed by respondent is that she and the purchaser, Driver, never met personally. We can see no force whatever in this suggestion as the bank was created her agent and her acts and conduct through and with such agency must be held to be as binding upon her as though personally done and the negotiations by the purchaser with the bank concerning this transaction must be held to be negotiations with her (*Umphray* v. *Hufschmidt*, 73 Cal. App. 140, 146 [238 Pac. 749]).

Respondent claims also that the evidence is in conflict as to the time of repudiation or cancellation of the transaction with respect to the payment of the $4,500 by the prospective purchaser. In our view of the evidence, however, there is no conflict upon this point. The escrow officer of the bank, Margaret Collins, testified that $500 was paid in at the time the escrow was signed by Mr. Driver; that she also recalled $4,500 being paid into the same escrow; that said $4,500 was paid on the same day that the cancellation order was placed with the bank, but before it was placed with them, this is, that the $4,500 was placed with her in the bank in escrow before said cancellation order was handed to her. The purchaser's check, as above noted, was dated June 27th, stamped paid June 28th, and the cancellation notice was also dated June 28th, so the most that could be said would be that the payment and repudiation notice were made on the same day, but this would be sufficient to raise a conflict as to the date of payment. While it is true that the defendant and her son testified that the repudiation notice was filed before the money was paid in, nevertheless this testimony coming from them must necessarily be hearsay as the fact and hour of payment could have been known only to the bank and to the intended purchaser. We, therefore, conclude that the evidence is without conflict that the payment was made prior to the cancellation notice. This act was clearly permissible under the terms of the escrow signed by defendant, by which the purchaser was permitted to pay the money at any time prior to cancellation in writing of the escrow offer.

In this connection it is contended also that the purchaser never fully agreed to the restrictions made by the defendant with respect to subterranean waters. Reference is made to

statements of said purchaser during negotiations, but a fair construction of the evidence shows that such statements referred to the unwillingness of the purchaser to buy unless and until the city of Santa Monica should agree to furnish water and sewerage to the property and when an agreement was reached with the city on the question no other conditions respecting water were insisted upon by the purchaser. In other words, it is clear that after June 25th, when the city acted with respect to the water, there was from that time on no objection on the part of the purchaser respecting the water situation.

The ability of the purchaser to pay for the property is not disputed and except for the matters above noted there is no other contention as to his lack of ability, willingness, readiness, and offer to purchase. Defendant, therefore, having refused on her part to carry out the transaction and having deliberately repudiated the same by making a contract to sell the property to another, there is in reality no equity whatsoever in her position and it may well be doubted whether she had a right on June 28th to cancel the escrow after having herself first repudiated it by contracting on June 27th to sell the property to another. Plaintiff, therefore, on this record clearly earned her commission.

It is not necessary that a binding contract be executed by the purchaser. It is only necessary that he be ready, able, willing, and offer to purchase. The rule in this respect has been often stated. ''It is also established law in this state that a written contract between the seller and the purchaser is not essential to the recovery of the broker's commission if he has produced to the seller a purchaser who is ready, willing and able to purchase upon the terms proposed by the seller and who has agreed to those terms and is willing and offers to enter into a binding written contract. The broker has performed his duty and has earned his commission regardless of whether a written contract is actually entered into or whether the sale is ever consummated by the delivery of the property and the payment of the purchase price.'' (*Twogood* v. *Monnette*, 191 Cal. 103, 107 [215 Pac. 542, 543]. See, also, to the same effect, *Umphray* v. *Hufschmidt, supra; Frank Meline Co.* v. *Kleinberger*, 77 Cal. App. 193 [246 Pac. 136]; *Ford* v.

*Cotton,* 82 Cal. App. 675 [256 Pac. 301], and numerous other cases.)

It has also been well said: "Whether the sale was prevented by the failure of perfect title or by the mere will of the vendor makes no difference. In either case the compensation had been earned by the agent. *Smith* v. *Schiele,* 93 Cal. 144 [28 Pac. 857]; *Phelan* v. *Gardner,* 43 Cal. 306–311; *Justy* v. *Erro,* 16 Cal. App. 519–522 [117 Pac. 575]; *Neilson* v. *Lee,* 60 Cal. 555; *Stanton* v. *Carnahan,* 15 Cal. App. 527–529 [115 Pac. 339]." (*Purcell* v. *Firth,* 175 Cal 746, 750 [167 Pac. 379].)

"Second, the law as to this contract is no different from the law as to brokers' contracts generally; that is to say, where the contract fixes the broker's right to remuneration upon his sale, if he shall produce a purchaser able and willing to buy, he has performed his part of the contract, and the owner's liability for his compensation or commission is complete, and cannot be avoided by any arbitrary or wanton refusal to consummate the sale." (*Merriman* v. *Wickersham,* 141 Cal. 567, 570 [75 Pac. 180, 181].)

The findings made by the court in the respects above noted being as a matter of law contrary to the evidence, the judgment is reversed.

Curtis, J., and Seawell, J., concurred.