[Civ. No. 1775.  First Appellate District.—August 31, 1916.]

SAMUEL JENNINGS, Appellant, v. F. R. JORDAN, · Respondent.

REAL ESTATE BROKER—EXCHANGE OF PROPERTIES—FAILURE OF CONSUM-
    MATION—COMMISSIONS NOT EARNED.—Under the terms of a contract
    for an exchange of properties, wherein each party agreed to convey
    title free of encumbrances and to pay the broker who procured the
    contract to be executed a commission, the commission is not earned
    where the exchange was not consummated by reason of the inability
    of one of the parties to convey title to a portion of his property,
    and the subsequent mutual abandonment of the contract.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

Dunn, White & Aiken, for Appellant.

Fitzgerald, Abbott & Beardsley, for Respondent.

KERRIGAN, J.—This action was brought to recover $1,825 alleged to have been earned by Herman Eppinger, Jr., the assignor of the plaintiff, as a commission upon a proposed exchange of certain lands. Judgment went for defendant, and the plaintiff prosecutes this appeal therefrom and from an order denying his motion for a new trial.

On the second day of May, 1914, John Fletcher and the defendant entered into a written. contract, under the terms of which Fletcher was to convey to the defendant some 333 acres of land, to be chosen by the defendant from a certain described larger tract of 436 acres in Yuba County, in exchange for a certain apartment house in Alameda County belonging to the defendant, the respective parties agreeing to convey their properties free and clear of all encumbrances. The contract contains various covenants and conditions, and also a provision—the one principally involved in this case—reading as follows: "The parties hereto further mutually covenant and agree that they will each pay to Herman Eppinger, Jr., a commission of Eighteen hundred and Twenty-five dollars." The contract was executed in triplicate, and a copy of it was left with Eppinger. It appears that this contract was entered into as a result of the efforts of Eppinger, but was never consummated by an exchange of the properties; notwithstanding which it is the claim of the plaintiff that he is entitled, as the assignee of Eppinger, to recover from the defendant the sum of $1,825 under the clause of the contract above set out.

The evidence shows that the defendant was ready, able, and willing to carry out his part of the contract, and that he made several ineffectual efforts to that end, and on July 3, 1914, made a formal tender of his deed, and thereupon deposited it in the Oakland Bank of Savings with instructions to deliver it to Fletcher at any time within ten days upon receipt of Fletcher's deed to the land agreed by him to be conveyed. Fletcher was immediately notified of this deposit, and like notice was given to plaintiff's assignor; but Fletcher, within the time limited by the contract or by the aforesaid notice, or at all, made no conveyance to the defendant of the lands agreed by him to be transferred, nor any tender of a deed; and the evidence upon the trial showed that as to part of the land he possessed no title, and that subsequently Fletcher, by his attorney in fact, and the defendant entered

into an agreement rescinding the contract of May 2, 1914, and reciting that Fletcher was unable to carry out its terms. The question to be decided is whether under these circumstances the defendant is entitled by virtue of the provision of the contract already set forth to recover from the defendant the sum of $1,825. The trial court held—and we think correctly—that he could not.

There can be no doubt that if A employs B to procure from C a binding agreement to exchange his property for that of A, B has performed his contract and earned his compensation when he has procured such agreement, notwithstanding the fact that C's title proves to be defective, and no exchange of properties takes place. (*Jauman* v. *McCusick*, 166 Cal. 517, [137 Pac. 254]; *Roche* v. *Smith*, 176 Mass. 595, [79 Am. St. Rep. 345, 51 L. R. A. 510, 58 N. E. 152]; 19 Cyc. 270.) But that is not this case. While the theory of the plaintiff, as stated in his brief, is that there was an employment of Eppinger by the defendant and Fletcher, the evidence discloses no such employment, and Eppinger's rights must depend entirely upon the contract actually entered into between the two contracting parties. Eppinger's connection with the matter is testified to by himself as follows: " . . . I brought Dr. Jordan and Mr. Fletcher together and introduced them, and proposed different lines of trade to each one of them, . . . and we finally got down to a basis of trade. Dr. Jordan wanted to go to see the land a second time. I told him I would not go and make a trip the second time until they drew up a contract what they were going to do if the land was satisfactory, and also showing me where I would come in, that I wanted my commission. On the strength of that this contract was drawn up before we went on the second trip." The plaintiff's right to recover, then, must depend entirely upon the terms of the contract entered into between Fletcher and Jordan, to which Eppinger was not a party. Up to that point, so far as the evidence discloses, there was no obligation upon them to pay him anything. The object of the contract actually entered into was to provide for an exchange of the properties of the parties thereto, each agreeing to convey title free of encumbrances, and the provision therein for the payment of a commission to Eppinger must be construed in its relation to the whole contract. Quite apart from the evidence of Jordan, one of the parties to it,

that as to him it was not his intention that any commission should be paid unless the exchange of lands was actually effected, such would be the natural and logical construction of the instrument. Unless and until the exchange was consummated the parties would receive no benefit from Eppinger's efforts; and, as we have seen, there was no obligation existing to pay Eppinger anything except that arising from the written agreement under consideration. The provision relating to such payment is not separable from the remainder of the contract; and certainly as to Jordan, when the other party to it found himself unable to comply with its terms and consented to its cancellation (Jordan already having a right to rescind it), the whole contract fell, the provision relating to Eppinger's compensation with the rest. If the broker should suffer any hardship from such construction, it is one inherent in the form of the contract entered into, and which was the only means he chose for his protection. It would certainly be a greater hardship upon the defendant to require him to pay $1,825 for services from which he had received no benefit and which were for the greater part voluntarily rendered.

The case of *Jauman* v. *McCusick,* 166 Cal. 517, [137 Pac. 254], cited by appellant, though very similar to the case at bar, contains one important difference, which renders the case inapplicable as an authority in plaintiff's favor. There the undertaking to pay the brokers was in terms for the procuring of a certain agreement of exchange which they in fact procured. In that case the court said (page 521): "It is no doubt the general rule that a broker authorized to sell real estate is not entitled to recover the agreed commission unless he shows that he has, in pursuance of his employment and within the time limited therein, found a purchaser ready and willing to purchase the property on the terms specified [citing cases]. Here, however, the defendant's agreement was not simply to pay a commission to the brokers upon their making a sale or exchange of the property. Her agreement was to pay $1,850 for their services in securing the particular agreement which was secured."

There is another material distinction to be noted between the two cases. In the one cited there was merely a mutual abandonment of the contract of exchange because of differences arising between the parties to it; whereas in the case

at bar, in addition to the evidence of mutual rescission, it was shown that Fletcher was unable to perform, the title to part of the land, to wit, fifty acres, agreed by him to be conveyed being in another person.

As to this fifty acres, the appellant asserts that there was no showing that Fletcher did not have a conveyance from the parties in whom title was shown to be, and consequently no showing that he was unable to comply with the contract. It is true that a man may take an option on land and agree to sell the land while the title is in another; but that doctrine has no application to the facts of this case, for here the defendant introduced in evidence a deed dated October 28, 1913, showing the title to the fifty acres in question to be in one Josephine Collins, and the *prima facie* presumption is that the title remained in that person at the time when performance was due from Fletcher, less than a year later (Code Civ. Proc., sec. 1963, subd. 32; *Hohenshell* v. *South Riverside L. & W. Co.*, 128 Cal. 627, 631, [61 Pac. 371]). It was incumbent upon the defendant to overcome the presumption. (*Dyar* v. *Stone*, 23 Cal. App. 143, 145, [137 Pac. 269].) It follows that no attempt having been made to do so, the presumption is that Josephine Collins still held the title to that property, and the finding, therefore, of the court that Fletcher was unable to convey the fifty acres must be upheld.

The judgment and order are affirmed.

Lennon, P. J., and Richards, J., concurred.