[Civ. No. 1957. First Appellate District.—July 6, 1917.]

## P. A. BRION, Respondent, v. PATRICK CAHILL, Appellant.

BROKER'S COMMISSIONS — WHEN EARNED. — A real estate broker employed to séll real property has earned his compensation when he has produced a purchaser able and willing to take the property on the terms proposed, or who has been accepted by his principal as such purchaser by entering into a contract with him, and in the latter event the ability of the purchaser to carry out his contract is immaterial to the right of the broker to receive compensation from his principal.

ID. — RULE — WHEN INAPPLICABLE. — Such rule is based entirely upon the fact that there exists a contract of employment between the principal and broker, and has no application to a situation where there is no previous contract, and where the claim of the broker is based upon a provision of a contract between his principal and the person produced by him to which he himself is not a party; in such case his rights are those only which are conferred by such contract.

ID.—AGREEMENT OF EXCHANGE—ABILITY TO CONVEY GOOD TITLE—EFFECT UPON COMMISSIONS.—The ability of the person produced by the broker to convey good title in the case of an agreement of exchange is not to be given the same effect, in so far as the broker's compensation is concerned, as in the case of an agreement of sale, for in the former case there is no acceptance of ability to consummate the purchase by entering into the agreement, as in the case of an agreement of sale.

APPEAL from a judgment of the Superior Court of Alameda County.   E. N. Rector, Judge Presiding.

The facts are stated in the opinion of the court.

Wilder Wight, for Appellant.

Robinson & Sizer, for Respondent.

KERRIGAN, J.—This is an action to recover the sum of one thousand dollars alleged to be due to plaintiff under a contract between one Sam Krummes and the defendant Patrick Cahill, embodying the terms of a proposed exchange of real estate.   One of the provisions of this contract was that

the defendant Patrick Cahill would pay to the plaintiff said amount for "services rendered"—the services referred to being evidently those rendered by the plaintiff in bringing about the proposed agreement of exchange. Judgment went in favor of plaintiff against Patrick Cahill and in favor of defendant Sumner Cahill against the plaintiff. Patrick Cahill appeals from that part of the judgment affecting him.

The facts material to a consideration of the appeal are briefly as follows: One Sam Krummes listed with the plaintiff a ranch situated near Lodi for sale or exchange. The latter brought this property to the attention of Patrick Cahill, who owned property in Oakland that he also was desirous of selling or exchanging. They together visited the Lodi property. Cahill expressed his willingness to exchange his Oakland property for it, whereupon Krummes and the plaintiff visited Oakland and inspected appellant's property. At this point the appellant left the completion of the details and the entry into a contract of exchange to his son, the codefendant. The latter went to the property at Lodi and there on behalf of the appellant, and as his attorney in fact, entered into the following contract—the plaintiff assisting in its preparation:

"This agreement witnesseth, that the undersigned, Sam Krummes, of Lodi, Calif., owner of the following described first piece of property (here follows description of property of Krummes), which (I) desire to exchange for the following second piece of property (here follows description of appellant's property) . . .

"For One dollar in hand paid, and other adequate and valuable considerations I hereby authorize P. A. Brion to act as my agent in negotiating an exchange, and I agree that if he shall secure an acceptance of the proposition to exchange the above described property on the terms, that I will within ten days furnish a certificate of title or an abstract from a reliable abstract company, and a grant, bargain and sale deed conveying title to the property first above described; and will allow five days for the furnishing of a certificate of title or abstract and a deed conveying title to the second above described piece of property.

"And it is further agreed with the agent P. A. Brion, that when he has secured an acceptance of the above proposition that I will then pay to said agent the sum of no dollars for

services rendered, or a commission of 5% on the gross price at which my property is put in in the exchange for such services.

"Dated at this 6th day of March, 1913.

"(Signed)   SAM KRUMMES.

"Witness:   P. A. BRION,
"GEO. THUMANN.

"This Agreement witnesseth‡ that the undersigned Patrick Cahill, owner of the second piece of property described within hereby accept the proposition of exchange therein and upon the terms therein stated, and agree to furnish a certificate of title or abstract from a reliable abstract company within 5 days, showing said property vested in him, and then to furnish a deed conveying title to said property to Sam Krummes, or his assigns or representatives. And I further agree to pay to P. A. Brion as agent, the sum of $1,000 for services rendered, for such services.

"Dated at this 6th day of March, 1913.

"SUMNER CAHILL,
"Power of Attorney.

"Witness:   P. A. BRION,
"GEO. THUMANN."

The exchange was not consummated owing to the fact—which sufficiently appears from the record, although on the objection of the respondent most of the testimony offered in proof thereof was excluded—that Krummes had no title to the property he agreed to convey. The appellant attempted to prove a mutual rescission of the agreement of exchange, but this evidence also was excluded by the court, which adopted the theory of the respondent that, irrespective of the consummation of the exchange or the ability of either of the parties thereto to carry out the terms of the agreement, the plaintiff was entitled to receive from the appellant the amount of compensation provided therein to be paid to him.

In support of the judgment the respondent relies upon a line of authorities holding that a real estate broker employed to sell real property has earned his compensation when he has produced a purchaser able and willing to take the property on the terms proposed, or who has been accepted by his principal as such purchaser by entering into a contract with him. In the latter event those authorities hold that the ability of the purchaser to carry out his contract is immaterial to

the right of the broker to receive compensation from his principal.

It will be observed, however, that the principle there laid down is based entirely upon the fact that there exists a contract of employment between the principal and the broker; and the *ratio decidendi* of those cases evidently is that the broker having performed what he was employed to do, is entitled to be paid without regard to the ultimate fate of the negotiations or contract between his principal and the purchaser produced by him. But it is equally apparent, we think, that the reasoning of those cases can have no application to a situation where there is no previous contract of employment, and where the claim of the broker is based upon a provision of a contract of exchange between his principal and the person produced by him to which he himself is not a party. In such a case his rights are those only which are conferred by such contract.

Nor can the fact that an agreement of exchange has been entered into by the owners of the respective properties, where the exchange is conditional upon the ability of the respective parties to convey good title, be given the same effect as is given in the authorities above referred to to an agreement of sale. In the latter case the principal is held, by thus entering into a contract with the proposed purchaser, to have accepted him as able to consummate the purchase; but no such acceptance, with the consequential right in the broker to his compensation, can be logically predicated upon the fact of entering into an agreement of exchange in which conveyance of good title by the person produced by the broker is expressly stipulated.

So far as the appellant here is concerned, those authorities can have no application. His contract was with Krummes. Its main purpose was to effect an exchange of his property for that of Krummes. His obligations under the contract were concurrent with those assumed by Krummes; and if he, tendering performance to Krummes, meets with a refusal on the part of the latter to perform, it is elementary that he immediately has the right of rescission, and upon rescinding is relieved of his obligations under the contract, one of which was his promise to Krummes to pay to the plaintiff a commission for his services in bringing about the abortive exchange. As was said by this court in the case of *Jennings* v. *Jordan,*

31 Cal. App. 335, [160 Pac. 576]—a case almost identical in its facts to this one—"The plaintiff's right to recover, then, must depend entirely upon the terms of the contract entered into between Fletcher and Jordan, to which Eppinger was not a party. Up to that point, so far as the evidence discloses, there was no obligation upon them to pay him anything. The object of the contract actually entered into was to provide for an exchange of the properties of the parties thereto, each agreeing to convey title free of encumbrances, and the provision therein for the payment of a commission to Eppinger must be construed in its relation to the whole contract. Quite apart from the evidence of Jordan, one of the parties to it, that as to him it was not his intention that any commission should be paid unless the exchange of lands was actually effected, such would be the natural and logical construction of the instrument. Unless and until the exchange was consummated, the parties would receive no benefit from Eppinger's efforts; and, as we have seen, there was no obligation existing to pay Eppinger anything except that arising from the written agreement under consideration. The provision relating to such payment is not separable from the remainder of the contract; and certainly as to Jordan, when the other party to it found himself unable to comply with its terms and consented to its cancellation (Jordan already having a right to rescind it), the whole contract fell, the provision relating to Eppinger's compensation with the rest. If the broker should suffer any hardship from such construction it is one inherent in the form of the contract entered into, and which was the only means he chose for his protection."

The respondent seeks to differentiate his case from that of *Jennings* v. *Jordan,* 31 Cal. App. 335, [160 Pac. 576], and says in his brief: "We are suing upon a contract between Brion and Patrick Cahill, or more particularly what might be termed a non-negotiable promissory note by Patrick Cahill to pay to P. A. Brion for services rendered the sum of one thousand dollars." It is, however, quite apparent that the contract sued upon is one to which the plaintiff was not a party; he was not named therein as a party; it was not executed by him nor was it ever delivered to him, and his name appears thereon as a witness to its execution.

From what we have said we think it clear that whatever rights the plaintiff may have had under the foregoing con-

tract with regard to Krummes, under the facts proved—and especially under those sought to be proven by the appellant but which evidence was erroneously excluded—he established no right of action against the appellant. That part of the judgment, therefore, from which the appeal is taken must be reversed, and it is so ordered.

Richards, J., and Beasly, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 4, 1917..