[Civ. No. 2075.  Third Appellate District.—March 10, 1920.]

# W. H. HOUGHTON, Appellant, v. P. MAX KUEHN-RICH, Respondent.

[1] BROKER'S COMMISSIONS—ABSENCE OF CONTRACT OF EMPLOYMENT—EXCHANGE OF REAL ESTATE—EXERCISE OF OPTION TO CANCEL.—A real estate broker is not entitled to recover a commission for procuring an assent to the terms of an agreement for the exchange of certain real properties where the only agreement to pay him a commission is contained in the agreement of exchange, to which he is not a party, and that agreement is canceled and terminated by one of the parties in accordance with an express option to terminate within a given time contained therein.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. W. McKinley, McKinley & McKinley and A. W. Ashburn for Appellant.

Bordwell & Mathews for Respondent.

ELLISON, P. J., *pro tem.*—Plaintiff sued defendant for four thousand dollars real estate commission for procuring one Ralph Granger to assent to the terms of an agreement for exchange of real estate, which was drawn by defendant's attorney. The cause was tried before a jury, which rendered a verdict for four thousand dollars in favor of the plaintiff. The trial court granted defendant's motion for a new trial, and from this order the plaintiff has appealed.

The pleadings admit that the defendant executed and delivered a certain instrument, which is set forth in paragraph I of the complaint, and which appears to be an agreement for the exchange of real property between the defendant, P. Max Kuehnrich, as party of the first part, and Ralph Granger, as party of the second part. It was stated in said agreement that the party of the first part

1. When has a real estate broker earned his commission, notes, 28 Am. St. Rep. 546; 139 Am. St. Rep. 225; Ann. Cas. 1914D, 395.

therein (the defendant herein) was the owner of certain property in Los Angeles (describing it), which he desired to exchange for certain real property in Brooklyn, New York (describing it), owned by Ralph Granger, the party of the second part therein. The terms upon which the defendant was willing to exchange his property for the property of Granger are therein set forth in detail.

The agreement bears date of October 28, 1915, and contains the following paragraph:

"It is understood, however, that the first party (Kuehnrich) shall have seventeen days from and after the 28th day of October, 1915, within which to inspect said property of second party, and that first party, if not satisfied therewith, may at any time during said period cancel and terminate this agreement. W. H. Houghton (plaintiff herein) are hereby authorized to act as my agents in negotiating an exchange, and I agree, that if they shall secure an acceptance of the proposition to exchange the above described properties on the above terms, I will within 2 days furnish a certificate of title or abstract from a competent searcher of titles, together with a deed of bargain and sale, conveying a good and sufficient title to the property above mentioned, except as aforesaid . . . It is further understood and agreed that if, for any reason whatever either or all principals to this agreement shall fail to comply with same, and in consequence this exchange shall fail of consummation, then the parties or party at fault for such failure hereby agrees to pay W. H. Houghton the full commission for both sides together with attorney and escrow charges.

"It is further agreed with W. H. Houghton, that when they have received an acceptance to exchange the above properties, on above mentioned terms, I will pay them the sum of $2500. as commission for such service, irrespective of any commission paid by the other party."

This agreement was signed by Kuehnrich, the defendant herein, and witnessed by H. B. Mathews. Immediately following their signatures is written the following:

"This agreement witnesseth: That I, Ralph Granger of San Diego, owner of the second herein described piece of property, hereby accept the proposition of exchange made

therein upon the terms stated and agree to furnish a certificate of title or abstract from a competent searcher of title, within 22 days showing property vested as described and to furnish a good and sufficient deed of conveyance as directed. I agree to pay to W. H. Houghton the sum of $1500. commissions for services rendered.

"Dated Oct. 28th, 1915.

"(Signed)   RALPH GRANGER.

"By W. H. HOUGHTON, Agent,

"W. B. MATHEWS, Witness."

W. H. Houghton was not authorized by any instrument in writing to sign Mr. Granger's name to the above paper. He talked with him over the telephone and was told by him to execute the contract, and it was upon this telephonic authorization that he signed Mr. Granger's name.

Within seventeen days after October 15, 1915, Kuehnrich, the party of the first part in said agreement, sent to Mr. Granger, at San Diego, a telegram worded as follows:

"You are notified that I am not satisfied with your property known as Clinton Apartments in Borough of Brooklyn, New York City, described in our agreement of exchange dated October twenty eighth and hereby cancel and terminate said agreement.

"P. MAX KUEHNRICH."

It is to be stated that plaintiff is not a party to any of the above documents. His name appears on the exchange agreement, not as a party thereto, but simply as agent for Mr. Granger for the purpose of signing his name thereto. He had no independent contract for the payment to him of a commission for making the exchange. His right to any compensation was dependent upon and inseparably bound up with the agreement of exchange which contained a cancellation clause for the benefit of the defendant.

After the cancellation of the contract by the defendant, Houghton sued Kuehnrich for four thousand dollars as broker's compensation, being two thousand five hundred dollars claimed as due on Kuehnrich's promise and one thousand five hundred dollars due on Granger's promise. As stated, the jury found a verdict in favor of the plaintiff for the full amount sued for, and on motion of the defend-

ant the court set aside the verdict of the jury and granted a new trial.

Respondent attempts to justify the action of the court in granting the motion for a new trial upon several grounds. We do not deem it necessary in disposing of the case to enter into a discussion of all of them. We think that upon the merits of the case, as drawn from a construction of the written contract of exchange, coupled with the proved facts, the plaintiff was not entitled to recover.

The circumstances under which a broker is entitled to his compensation for finding a purchaser of real estate are thus stated by the appellate court in *Stewart* v. *Bowie*, 43 Cal. App. 751, [185 Pac. 868] : "Unless there is a provision in the contract to the contrary a real estate broker employed to negotiate a sale of land earns his commission and it is payable when he produces, within the time allowed a purchaser who is ready, able, and willing to take the property on the terms prescribed or with whom the owner enters into a contract upon those or other terms satisfactory to him."

We are of opinion that this case must be governed by the principles announced in cases like *Jennings* v. *Jordan*, 31 Cal. App. 338, [160 Pac. 576], and *Brion* v. *Cahill*, 34 Cal. App. 262, [165 Pac. 704]. In the latter case it appeared that the defendant and one Krummes entered into a written contract of exchange of their respective properties, and in the same contract and as a part of it, over the signature of the defendant, was written: "And I further agree to pay P. A. Brion as agent, the sum of $1,000 for services rendered, for such services." The exchange was not consummated, owing to the fact that Krummes had no title to the property he agreed to convey. Upon suit brought by the broker, judgment was rendered in his favor. We find the following language used in the course of the opinion of the appellate court, in reversing the judgment: "In support of the judgment the respondent relies upon a line of authorities holding that a real estate broker employed to sell real estate has earned his compensation when he has produced a purchaser able and willing to take the property on the terms proposed or who has been accepted by his principal as such purchaser by entering into a contract with him. In the latter event these authorities hold that the

ability of the purchaser to carry out his contract is immaterial to the right of the broker to recover compensation from his principal.'' And, in the same case, quoting from *Jennings* v. *Jordan, supra,* the opinion continues: ''The object of the contract actually entered into was to provide for an exchange of the properties of the parties thereto, each agreeing to convey title free of encumbrances, and the provision therein for the payment of a commission to Eppinger must be construed in its relation to the whole contract. . . .

''Unless and until the exchange was consummated, the parties would receive no benefit from Eppinger's efforts; and, as we have seen, there was no obligation existing to pay Eppinger anything except that arising from the written agreement under consideration. The provision relating to such payment is not separable from the remainder of the contract; and certainly as to Jordan, when the other party to it found himself unable to comply with its terms and consented to its cancellation (Jordan already having a right to rescind it), the whole contract fell, the provision relating to Eppinger's compensation with the rest.''

These cases are referred to in *Stewart* v. *Bowie, supra,* as follows: ''In such cases [referring to *Jennings* v. *Jordan* and *Brion* v. *Cahill, supra*], the broker, not having the protection of the ordinary broker's contract for compensation for services to be performed, must stand or fall by the contract actually entered into, and if he has seen fit to allow the payment of his compensation to be dependent upon the performance of the contract made between other parties than himself he cannot complain if through the nonperformance of that contract his own contingent right be lost.''

[1] The case at bar is very much stronger in favor of respondent's position than either the Jennings or Brion cases. In neither of those cases did the contract give to either party the privilege as does the contract here of terminating it within a specified time. In both of those cases the exchange was not consummated because one party to the contract had not a good title to convey, and the contracts were either abandoned or rescinded for that reason. In the case at bar the exchange was not consummated because the defendant, availing himself of an express pro-

vision of the contract, gave notice before the time fixed by the contract for so doing that the contract was terminated and annulled. The exact language was: "I hereby cancel and terminate said agreement." The provision of said agreement for the payment of a compensation to plaintiff was an integral part of it, and when the contract was canceled and terminated all its provisions were canceled and terminated, including the provision for plaintiff's benefit.

The only contract that ever existed providing a compensation for plaintiff having ceased to exist, he is in court without any contract to support his claim and cannot recover.

Counsel for appellant rely upon the case of *Jauman* v. *McCusick*, 166 Cal. 517, [137 Pac. 254], to sustain their position upon the point now under discussion. The agreement in that case between the owner of the property for an exchange was quite similar to the one in this case, but there is the material distinction between the two in that the contract there considered contained no provision like the one in this contract, that the party had the option to cancel the same within a specified time—to cancel the entire contract.

When such option was exercised, it occurs to us the plaintiff's right to compensation no longer existed.

The case of *Ketcham* v. *Axelson*, 160 Iowa, 456, [142 N. W. 62], also relied upon by appellant, is clearly distinguishable from this case in that in the Axelson case plaintiff had an independent broker's contract, good under the laws of Iowa, in and by which it was agreed that he would be paid $170 if he would secure a party who would exchange property with the defendant *at such figure as would be satisfactory to the defendant*. The plaintiff procured a party who entered into a binding written contract with the defendant for an exchange of lands *on terms satisfactory to the defendant*. It is true the contract of exchange contained a clause that defendant might cancel it before a certain date. The parties, after entering into a mutually binding agreement, had some misunderstandings, a lawsuit, and finally released each other from the contract of exchange. The contract was not canceled by the party exercising the privilege of cancellation therein contained.

It was correctly held that the agent was entitled to his compensation. He had fully performed his contract. He had procured a party, ready and willing to exchange properties on *terms* satisfactory to the defendant, and they had entered into a binding written contract of exchange. The plaintiff's contract for compensation antedated the exchange agreement. His compensation was not provided for therein nor referred to. He brought the parties together and they made their own contract. His compensation was not contingent upon anything either party to the contract might thereafter do or fail to do. His contract for compensation, not being a part of the exchange contract, was in no way affected by its terms or by subsequent mutual cancellation. The court said: ''The right of the agent to his commission is in no way affected by the conduct of his principals to which he has not consented subsequent to the execution of the contract of sale.''

Appellants call attention to a clause in the exchange agreement wherein it is agreed that if for any cause either of the land owners should fail to comply with its terms and in consequence, the exchange should fail, the party or parties at fault should pay the plaintiff his full commissions, and claim that this clause secures him a right of recovery. Obviously, this has no reference to the contract becoming unenforceable between the parties by reason of its cancellation by the defendant acting within the rights given him by the terms of the contract. Each party had agreed to do certain things, such as to give certificates or abstracts of title, to execute certain mortgages, to execute deeds conveying title, etc. Either one, or both, might neglect to do some or all of these things, and as a result no exchange of properties be made, and the clause refers to such contingencies.

Neither party could be said to be in ''fault'' when simply doing or omitting to do the very things which the contract specifies he might do or not do.

As we are of the opinion a fair construction of the terms of the contract, viewed in connection with what transpired, leads to the conclusion the plaintiff has not a right of recovery, it follows that upon this ground alone the court

was justified in granting the defendant's motion for a new trial.

The order granting a new trial is hereby affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 6, 1920.

All the Justices concurred.