[L. A. No. 9480. Department One.—November 22, 1928.]

C. H. LIND et al., Copartners, etc., Respondents, v. E. A. HUENE et al., Defendants; CLARA HUENE, Appellant.

W. W. Kaye for Appellant.

Louis F. Labarere and John A. Cronin for Respondents.

SEAWELL, J.—This appeal was taken by defendant Clara Huene from a judgment for plaintiffs in an action brought by them to recover a commission as real estate brokers for securing a lessee for an apartment house building which was being constructed upon premises in the city of Los Angeles owned by said defendant. The transaction was never consummated because of the refusal of the prospective lessee to accept a lease of the premises, in accordance with the terms of her agreement with defendant, and to pay sums of money which became due under said agreement.

Appellant recognizes the general rule that a broker employed to negotiate a sale or lease of land earns his commission, and it is payable, when he produces a purchaser or lessee who is ready, willing and able to take the property on the terms prescribed, or other terms accepted by the owner, and the broker cannot be deprived of the agreed

commission because the purchaser or lessee repudiates the transaction by refusing to make payments provided for or to accept the deed or lease tendered in performance of the contract of sale or lease. (*Lundeen* v. *Ottis*, 164 Cal. 183 [128 Pac. 335]; *Johnson* v. *Krier*, 59 Cal. App. 330 [210 Pac. 966]; *Rucker* v. *Hubler*, 56 Cal. App. 771 [206 Pac. 472].) Defendant contends, however, that the general rule does not apply in her case for the reason that the agreement for the commission herein expressly makes the earning of a commission conditional upon the payment by the lessee to the owner of advance rental. ▮ She further relies upon the rule stated in *Jennings* v. *Jordan*, 31 Cal. App. 335 [160 Pac. 576], *Brion* v. *Cahill*, 34 Cal. App. 258 [165 Pac. 704], *Stewart* v. *Bowie*, 43 Cal. App. 751 [185 Pac. 868], and more recently in *Houghton* v. *Kuehnrich*, 46 Cal. App. 469 [189 Pac. 457], wherein it is said that when there is no separate enforceable contract of employment with the broker and the owner's promise to pay the broker a commission is found only in the contract entered into between the owner and the prospective purchaser, if the purchaser should fail to carry out his undertaking to purchase, the owner is released from his promise to pay the broker a commission. In such a case, if the wrongful abandonment of the contract is consented to, the whole contract falls, the provision relating to the agent's commission with the rest. (*Jennings* v. *Jordan*, 31 Cal. App. 335 [160 Pac. 576].)

The inapplicability of the last-mentioned rule to the case at bar is patent from a recital of the transaction. At the time said apartment house building was in the course of construction, salesmen in the employ of plaintiffs procured from defendant and her husband oral authorization to undertake to find a lessee for a term of ten years at a monthly rental of $1,000. Such authorization was given upon the solicitation of plaintiffs' salesmen. The employment of plaintiffs as brokers to secure a lessee was not evidenced by a written agreement, nor does it appear that the rate of commission was definitely agreed upon. On October 6, 1923, a written "Offer to Lease," prepared at plaintiffs' office and signed by Mrs. Minnie G. Driggs, the prospective lessee, was submitted to the owner of said property, Mrs. Clara Huene, appellant herein, and to her husband by Mrs. Westover, plaintiffs' employee. A written "Acceptance," also pre-

pared by plaintiffs and designed for the signature of Mrs. Huene, followed the "Offer to Lease" executed by Mrs. Driggs. Said "Acceptance," as originally submitted to the Huenes, was as follows:

"I accept the above offer to lease and agree to the terms and conditions as set forth therein. I further agree to pay the Lind-DeHaven Co. the usual commission for services rendered, in accordance with the rules of the Los Angeles Realty Board, said amount to be retained out of the moneys received as designated in this offer to lease."

The realty board commission on the transaction would have approximated $6,000. Mrs. Huene refused to consent to the payment of such a commission and after some negotiations with plaintiffs' agent agreed to pay not more than $3,500. Several days later plaintiffs consented to the reduction and the words "the usual commission" and "in accordance with the rules of the Los Angeles Realty Board" were "x'd" out and the $3,500 written in their stead, whereupon Mrs. Huene signed the "Acceptance." On October 20, Mrs. Driggs gave notice to plaintiffs that she refused to go on with the deal, and when a lease signed by the Huenes was presented to her for acceptance during the early part of November she again repudiated the contract she had made with Mrs. Huene. No part of the $2,000 agreed to be paid upon the execution of the "Acceptance" was ever received from Mrs. Driggs. Having other offers to lease the property, the Huenes did not choose to enforce the contract by court proceedings.

On the date when the "Acceptance" was signed by Mrs. Huene, there had been inserted in writing, immediately between Mrs. Driggs' signature to the "Offer to Lease," which was a rather long document, presumably typewritten, and the "Acceptance," the following provision:

"Receipt.

"We hereby acknowledge the receipt of $6000.00 (note) dollars.

"LIND-DEHAVEN Co.,
"By C. H. LIND."

This provision will be discussed more fully hereafter.

In the cases above cited, which hold that where there is no separate contract of employment with the broker and the

owner's promise to pay a commission is found only in the contract entered into between the owner and the prospective purchaser, if the purchaser should fail to carry out his undertaking the owner is released from his promise to pay a broker's commission, the transactions involved were for the sale or exchange of real property. In those cases the broker could not recover a commission in the absence of a written commission contract or memorandum signed by the seller (Civ. Code, sec. 1624, subd. 6), and the only enforceable written agreement to pay a commission was contained in the contract between the owner and the purchaser, which agreement fell with the written contract when the purchaser repudiated it and the owner consented to the wrongful abandonment. ██ In the instant case the brokers were not authorized to sell or exchange the property, but only to procure a lessee. The contract for their employment or compensation was not required to be in writing by the terms of subdivision 6 of section 1624 of the Civil Code, which applies only to agreements authorizing or employing an agent or broker to purchase or sell real estate. (*Guy* v. *Brennen,* 60 Cal. App. 452 [213 Pac. 265].) The negotiations between plaintiffs' agent and Mrs. Huene resulted in a valid and enforceable oral agreement between plaintiffs and Mrs. Huene for the payment of a commission of $3,500 to plaintiffs. Upon the repudiation of the contract for a lease there remained to the brokers under their valid oral contract with the lessor the same rights they would have possessed had their employment been evidenced by a separate written agreement between themselves and the lessor.

██ Appellant must fail on this point, but on the other point made by her, to wit, that the agreement made payment of the commission conditional upon the receipt of advance rental agreed to be paid by Mrs. Driggs, the case must be reversed. Mrs. Driggs' "Offer to Lease" contained the following provision:

"As security for my faithful performance of this lease, I agree to pay six months' rental in the sum of Six Thousand Dollars ($6,000.00), as follows: $2,000.00 upon my signing of this agreement, and $4,000 upon the completion and my occupancy of the building. This total sum of $6,000 to apply—$2,000 as the first two months' rent, and $4,000 to be the last four months' rent of the lease."

The "Acceptance," quoted above, when first submitted to Mrs. Huene and as finally executed by her, provided that the amount agreed to be paid as a commission was "to be retained out of the moneys received as designated in this offer to lease." It was not contemplated that the building would be completed until December 15th. The payment of a portion of the brokers' commission of $3,500 would not become due until that date, since only $2,000 was due as advance rental upon the execution of the contract. We regard the quoted language as a plain and unequivocal declaration that payment of the commission was to be made only if the amounts agreed to be paid by Mrs. Driggs were actually received. Said language is to be given the same effect as was ascribed to the contract in *Lindley* v. *Fay,* 119 Cal. 239 [51 Pac. 333], where the provision was to pay a commission "out of the first money received." In *Beckwith-Anderson Land Co.* v. *Allison,* 26 Cal. App. 473 [147 Pac. 482], defendant was notified by letter from plaintiff as a real estate brokerage firm of an offer received by plaintiff to purchase real property owned by defendant. The letter contained the following: "If you should consider this we would want *to retain as a commission* for ourselves 5%, being fifteen hundred ($1500.00) dollars out of the first cash payment of ($15,000.00)." (Italics supplied.) Defendant accepted the offer. In denying a recovery of a commission to plaintiff, the court said: "The letter proposed that the commission should be paid 'out of the first cash payment of $15,000.' No such payment has ever been made; nor can the failure to make it be chargeable as caused by any fault of the defendant. The condition so stated under which the commission might become due has never occurred." (See, also, *Dunne* v. *Colomb,* 192 Cal. 740 [221 Pac. 912]; *McPhail* v. *Buell,* 87 Cal. 115 [25 Pac. 266]; *Coulter* v. *Howard,* 203 Cal. 17 [262 Pac. 751].)

The plaintiffs rely upon their receipt of said $6,000 note, as acknowledged by plaintiff Lind by the insertion, as above explained, between Mrs. Driggs' signature to the "Offer to Lease" and the first line of the "Acceptance," as creating a different commission contract. On October 6th, the day Mrs. Driggs signed the "Offer to Lease," she also signed a $6,000 promissory note payable to plaintiffs and to become due October 22d. This was a separate transaction between

plaintiffs and Mrs. Driggs. Appellant and her husband testified, and there is other evidence sustaining them, that the acknowledgment of said note was not on the offer when it was presented to them first on October 6th, at the time they objected to the fixing of the commission in accordance with the rules of the realty board, and that they did not observe that it had been inserted in ink until several days thereafter, at the time when Mrs. Huene signed the acceptance and demanded the cash payment. The positive testimony of Mr. and Hrs. Huene, Mrs. Westover, the employee who conducted the transaction for plaintiffs (in one part of her testimony), Mr. Brock, the constructor of the building, and Mr. Arctander, a former salesman of plaintiffs, further aided by the conduct of the parties and the strong probabilities arising in the case, which cannot be ignored, present convincing proof to the effect that the Huenes, from the time their notice first fell upon the ink insertion written by plaintiff Lind between the offer to lease and its acceptance, emphatically and positively refused to accept a note in lieu of cash and that they were assured that the word "note," which plaintiffs parenthetically inserted after the words $6,000, referred to a separate transaction between plaintiffs and Mrs. Driggs, and was inserted for their own convenience, and had nothing to do with the transaction between Mrs. Driggs and the Huenes. It would have been an absurd, if not an inane thing for the Huenes, who were insisting on cash advance payments aggregating $6,000, to have accepted as *security* therefor another form of evidence of debt in the form of a bare promissory note. They already had her bound by the execution of the offer to lease, and another signature would not tend to secure the first obligation any more than the first would tend to secure the second. The testimony of the witnesses above named is reasonable, probable and seems convincing and is supported by the rationale of the situation. Mrs. Westover, the saleslady who conducted the transaction, gave testimony to the effect that Mr. and Mrs. Huene called her attention to the receipt calling for a note, whereas the offer to lease called for cash, and that she (Mrs. Westover) explained to the Huenes that the note was inserted as a matter of convenience arranged between Mrs. Driggs and plaintiffs and that it was made to give Mrs. Driggs time to bring her cash to Los Angeles. It

is true that plaintiff Lind and Mrs. Westover elsewhere in her testimony denied the conversations as related by the defendant's witnesses touching the purpose of said note, but there is an inherent improbability in plaintiffs' contention that a note made to plaintiffs by Mrs. Driggs was to be accepted as cash, in the light of the circumstances of the transaction.

Two days before the note, which was at all times in the possession of plaintiffs until after this action was commenced, fell due, to wit, October 20, 1923, Mrs. Driggs withdrew from the transaction and denied any and all obligations arising from the execution and delivery of said note to plaintiffs. As a matter of fact, plaintiffs considered bringing an action upon it against Mrs. Driggs. Said note was not out of plaintiffs' possession until after it was long past due and had been repudiated by Mrs. Driggs. Some two weeks before this action was commenced plaintiffs indorsed it to Mrs. Huene and sent it to her through the mail after said action had been commenced. It was promptly returned by her to plaintiffs.

Conceding that the written contract between Mrs. Driggs and the appellant did not correctly embody the agreement between them, nor properly state the oral commission contract between plaintiffs and appellant, and that the parol evidence rule was not violated in the admission of evidence as to the note referred to in the receipt, the judgment of the court below cannot be upheld. The course of dealings between the parties shows that if the note was accepted by Mrs. Huene "in lieu of the cash payment," it would merely provide a different fund from which the commission was to be paid. Said note was due October 22d, about two weeks after it was executed, and plaintiffs now assert that it was taken pending the arrival of Mrs. Driggs' securities from the east. If the note was accepted by Mrs. Huene in lieu of the cash payment, the commission to be retained from the cash payment was thereafter to be retained from the payment made on the note. Payment of the commission was dependent upon payment of the note, which was never paid.

Giving full force and effect to the receipt signed by plaintiff Lind, which reads: "We hereby acknowledge the receipt of $6,000.00 (note) dollars," does not, as a matter of law,

weaken in any degree the terms of the offer to lease. The "Acceptance," which follows said receipt, reads:

"I accept the above offer to lease, and agree to the terms and conditions as set forth therein. I further agree to pay the Lind-DeHaven Co. $3500.00 for services rendered, said amount to be retained out of the moneys received, as designated in this offer to lease."

It will be noticed that the commission is "to be retained out of the moneys *received as designated in this offer to lease.*" The agreements of the parties are thereby reaffirmed.

After the transaction failed by reason of Mrs. Driggs' refusal to consummate it, a formal lease was drawn up by plaintiffs and executed by Mrs. Huene, but Mrs. Driggs declined to consider the proposition further. Plaintiffs suggest that this willingness on the part of Mrs. Huene to carry out the original plan was a ratification of the first proposition. We think there is no merit in this point.

The judgment is reversed.

Curtis, J., and Preston, J., concurred.