[Civ. No. 1619. Fourth Appellate District.—November 13, 1936.]

C. G. DOWDS, Appellant, v. WILLIAM W. ARMSTRONG et al., Respondents.

W. L. Pollard and S. L. Kurland for Appellant.

R. Y. Williams and West & McKinney for Respondents.

BARNARD, P. J.—The plaintiff brought this action to recover for his services as a real estate broker in procuring an agreement for exchange of properties between the defendants Armstrong and the defendants Adams, although the prayer is for $13,000 "as actual damages, and for the sum of $15,000 as exemplary damages". Demurrers filed by all defendants were sustained without leave to amend, and from the ensuing judgment the plaintiff has appealed.

This action is based upon three written instruments all dated May 13, 1933, copies of which are attached to the complaint as exhibits. In exhibit "A" it is provided that the Armstrongs, in consideration of one dollar paid them by the appellant, "do hereby give and grant unto the said C. G. Dowds, his heirs or assigns, the option at any time within thirty-three days from date hereof, to purchase the hereinafter described property for the amount and upon the

terms herein stated''. After describing the property the option provided that the property should include the crop of fruit then growing thereon; that the purchase price should be $65,000; that a trust deed for $29,000 should be assumed by the appellant or his ''nominee''; that a contract between the respondent Adams and certain other parties should be assigned to the respondents Armstrong and taken as a payment of $34,000 on the purchase price; that the balance of $2,000 was to be paid in cash in escrow; that the purchase price named was to be net and no commission out of the same was to be paid; and that the agreement was to be void if the $2,000 was not paid or deposited in escrow within thirty-three days.

Exhibit ''B'' purports to be an agreement between the respondents Adams as first party and the respondents Armstrong as second party, although it was signed only by the first party. It provides for the conveyance by the second party to the first party of the real property described in exhibit ''A'' on terms considerably different from those set forth in exhibit ''A''. Among other things, it is provided that the purchase price is $78,000; that the second party is also to receive from the first party another piece of real property located in Newport Beach, taking the same at a value of $10,000; that the first party is to pay a cash difference of $5,000; that the Newport Beach property is to be deeded to one Mary L. Stream; that neither party is to pay any commission for procuring this exchange; and that the agreement is to constitute escrow instructions to a named title company when signed by both parties. Exhibit ''C'' purports to be an agreement between the respondents Adams as first party and the respondents Armstrong as second party, and was signed by the Armstrongs only. With certain exceptions it follows the language of exhibit ''B''. However, it contains a paragraph stating that neither party assumes any personal liability for the payment of encumbrances on the properties received. The place for the name of the party to whom the Newport Beach property was to be deeded is left blank. In one paragraph the first party ''agrees to pay nothing as a commission for procuring this exchange'' and in another the second party ''agrees to pay $3,000 and the'' Newport Beach property, there being no statement as to whom these are to be paid or for what purpose. It

also contains the provision that it is to constitute escrow instructions when signed by both parties thereto.

The complaint contains five causes of action. In the first it is alleged that the respondents Armstrong gave the appellant, a licensed real estate broker, or his nominee, an option to purchase certain property as set forth in exhibit "A"; that the appellant through his nominees, the respondents Adams, accepted the offer contained in the option and agreed to pay the amount therein specified and further agreed to pay an additional $13,000 for the property; that the appellant informed the respondents Armstrong of the acceptance of the offer; that all of the respondents thereupon executed an agreement of sale of the property mentioned in the opinion upon the terms therein stated; that thereafter the respondents Armstrong encumbered the property with a crop mortgage and failed to remove it upon demand; that on August 2, 1933, the respondents Adams served notice of their rescission of the exchange agreement; that on August 3, 1933, the respondents Armstrong served notice of their "acceptance of rescission"; that upon the acceptance of the offer contained in the option by the respondents Adams the appellant became entitled to the sum of $13,000; and that the respondents conspired to cheat and defraud the appellant by agreeing upon a rescission of the exchange agreement. The second cause of action is similar to the first with the exception that it refers to exhibit "A" as a commission agreement or agency agreement given to the appellant as a real estate broker in order to secure a sale of the property, and alleges the procuring of a purchaser upon the terms of the offer to sell and the purported rescission in order to defraud the appellant out of the $13,000 to which he was entitled. The third cause of action seeks to hold the respondents Armstrong alone upon the ground that they had breached the terms of exhibit "A" to the appellant's damage in the sum of $13,000 by refusing to comply with the terms of the option after the appellant had informed them that he had procured a purchaser at a price of $13,000 above the price named in the option, and after executing a written acceptance of the purchaser's offer. The fourth cause of action alleges that the respondents Armstrong gave the appellant a written agency agreement to sell the property in question, that the appellant procured a purchaser and

earned a commission of $13,000, and that these respondents wilfully and without cause failed and refused to consummate the transaction. The fifth cause of action alleges that the appellant procured a purchaser for the property at the request of the respondents Armstrong, that the reasonable value of the appellant's services is $13,000, and that these respondents have wilfully and without cause refused to pay for the services. It is further alleged in the complaint that after the execution of the agreements the appellant wrote his name between the word "pay" and the figures "$3,000" in that part of exhibit "C" which is above quoted.

The appellant argues that he is entitled to the amount which the respondents Adams agreed to give for the property described in exhibit "A" in excess of the amount named therein since exhibit "A" was both an option to buy and an agency agreement. He relies particularly on *Ruess* v. *Baron*, 217 Cal. 83 [17 Pac. (2d) 119]; *Hiss* v. *Sutton*, 203 Cal. 459 [264 Pac. 748]; *Sill* v. *Ceschi*, 167 Cal. 698 [140 Pac. 949]. None of these cases is of any assistance to the appellant. Exhibit "A" is purely an option to purchase certain property on certain terms, there is no agreement to pay a commission or to turn over all received over a named price, and it contains no agency agreement or authorization to sell the property. Moreover, it runs to the appellant or his nominee and it is alleged that the acceptance of the offer contained in the option was made by the respondents Adams as the nominees of the appellant. No reason appears why these nominees did not succeed to every right which the appellant might have had under the option. It would further appear that the terms of the option were not complied with in that the cash payment was not made or deposited in escrow within the time named in the option.

The appellant's right to a commission must rest upon the claim that exhibits "B" and "C" constitute an agreement for the exchange of properties between the two sets of respondents and that this contract contains an agreement for his benefit, namely, to turn over to him the excess over the purchase price demanded by the respondents Armstrong, as set forth in exhibit "A". It is doubtful whether the minds of the parties to the purported final agreement ever met since there are so many things in exhibit "C" which are not contained in exhibit "B". The appellant was not named

in either of these instruments and neither contains any express agreement for his benefit. Apparently under exhibit "C" the respondents Armstrong were to "pay" $3,000 and the Newport Beach property to the same person. If the minds of the parties met it would seem that this person was Mary L. Stream, as exhibit "B" provided that the Newport Beach property was to be deeded to her. The appellant, without the authority of anyone, after the execution of exhibit "C" by the respondents Armstrong, inserted his name between the word "pay" and the figures "$3,000.00" which followed. As thus changed the clause provided that the respondents Armstrong were to "pay" $3,000 and the Newport Beach property to the appellant. This was not only a material alteration of the instrument, but created a more definite conflict between it and exhibit "B" with respect to what should be done with the Newport Beach property.

If there ever was any agreement between the two sets of respondents for the benefit of the appellant the entire contract under which he claims was rescinded before he attempted to collect his commission, and his right was thereby terminated (*Jennings* v. *Jordan,* 31 Cal. App. 335 [160 Pac. 576]; *Brion* v. *Cahill,* 34 Cal. App. 258 [165 Pac. 704]; *K. Lundeen Corp.* v. *Barlow,* 120 Cal. App. 391 [7 Pac. (2d) 1102].) In the last of these cases the court said:

"Plaintiff cites a number of cases holding that a real estate broker employed to sell real property has earned his compensation when he has produced a purchaser able and willing to take the property on the terms proposed, or who has been accepted by his principal. In these cases it will be found that the broker's rights are saved to him under a contract existing between the broker and the party defendant. Here no such contract existed, and the contract under which plaintiff claims was terminated and extinguished before plaintiff attempted to enforce his alleged rights. (*Jennings* v. *Jordan,* 31 Cal. App. 335 [160 Pac. 576]; *Brion* v. *Cahill,* 34 Cal. App. 258 [165 Pac. 704]; *Stewart* v. *Bowie,* 43 Cal. App. 751 [185 Pac. 868]; *Houghton* v. *Kuehnrich,* 46 Cal. App. 469 [189 Pac. 457].) In the case of *Lind* v. *Huene,* 205 Cal. 569, at page 571 [271 Pac. 1087, 1088], the court, after citing the above cases, says: 'and more recently in *Houghton* v. *Kuehnrich,* 46 Cal. App. 469 [189 Pac. 457], wherein it is said that when there is no separate enforceable contract

of employment with the broker and the owner's promise to pay the broker a commission is found only in the contract entered into between the owner and the prospective purchaser, if the purchaser should fail to carry out his undertaking to purchase, the owner is released from his promise to pay the broker a commission. In such a case, if the wrongful abandonment of the contract is consented to, the whole contract falls, the provision relating to the agent's commission with the rest.' The court found, in the case above referred to, there was such an authorization in a separate contract. In the case at bar there was no such separate agreement and the contract had been terminated prior to plaintiff's attempt to enforce it.''

█ The allegations in the complaint to the effect that the respondents conspired to bring about a rescission of their agreement to the damage of the appellant will avail him nothing. Not only did these parties have the right to rescind but, under the authorities referred to, the appellant broker, not having a separate contract of employment with any of the respondents, was dependent upon a consummation of the exchange agreement (*Brion* v. *Cahill, supra*). The appellant contends throughout that exhibit ''A'' must be interpreted as containing an authorization to sell or a contract of employment. In the last analysis his entire case depends upon this contention which, in our opinion, cannot be sustained.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 11, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 11, 1937, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing after decision by the District Court of Appeal of the Fourth Appellate District is denied, but we withhold approval of that part of the opinion which indicates that even though there was an agree-

ment for benefit of plaintiff, yet the conspiracy to bring about a rescission would not be sufficient to warrant a recovery by him.