[Civ. No. 19093. First Dist., Div. One. June 27, 1961.]

O. J. WEBER, Respondent, v. GLENN L. DOBYNS et al.,
Appellants.

Allen H. Trant and Harry D. Miller for Appellants.

Haley, McInerney & Logan and William H. McInerney for Respondent.

DUNIWAY, J.—Defendants, husband and wife, owners of real property, appeal from an adverse judgment in favor of plaintiff, a licensed real estate broker who sued them for a commission. They make three contentions: (1) that the commission was to be payable only from sums to be received from the purchasers, which sums were never received; (2) that the exchange agreement procured by the broker was rescinded by the parties to it, and the broker's rights were thereby defeated; and (3) that the broker was not entitled to base his recovery upon a listing agreement. We conclude that the judgment must be affirmed.

Because it clearly appears that the judgment is based upon certain provisions in the appellants' "Acceptance" of the exchange agreement, and not upon the listing agreement, which was signed only by the appellant wife, we do not find it necessary to consider appellants' third contention.

### FACTS

It is not disputed that appellant wife signed a document headed "STANDARD FORM AUTHORIZATION TO SELL," authoriz-

ing respondent to find a purchaser for appellants' property in Oakland known as the Mayo Motel, upon terms therein stated. This is the so-called listing agreement. Respondent did not find a purchaser who would buy upon those terms. He did, however, find Mr. and Mrs. Leader, who were willing to exchange a note and chattel mortgage upon a Yellow Cab business for appellant's property, which was subject to four notes and trust deeds totalling $120,683. The Leaders signed an "Exchange Agreement," a printed form filled out by respondent, on November 3, 1957. Below the signature of the Leaders appears the following:

"ACCEPTANCE

"The foregoing offer is hereby accepted upon the terms and conditions stated, and the undersigned, hereinbefore called the second parties, agree to pay *Calif. Realty Inv Ctr. Seven thousand-two hundred fifty $7,250* commission for services rendered to become due on the execution of this agreement by all parties hereto. Receipt of a copy of this exchange agreement is hereby acknowledged. *To be personal note with the note from Leaders as collateral security payable @ $100 per mo. wit* [sic] *int. @ 6% from 1/1/58. Payments to begin 2/1/58.*

Dated ....................., 19....
11-4-57

GLENN L. DOBYNS
FRANCES DOBYNS"

(The italicized portions are in respondent's handwriting.)

The "Acceptance" was signed by both appellants, on the date shown. Respondent did business under the fictitious name of California Realty Investment Center.

After the agreement was signed, it was discovered that the fourth deed of trust contained an "acceleration clause," under which the full amount of the note secured by it would become due if the property were transferred. The court found that respondent did not discover this until November 17, and that he had been told by appellants that none of the trust deeds contained such a clause. The holders of the note refused to waive their rights under the acceleration clause. The exchange was never consummated, and the evidence indicates that both appellants and the Leaders abandoned the deal, after considerable negotiations, because of the acceleration clause. The court, however, made no finding on this question, except to

find that appellants executed the fourth deed of trust at the time that they purchased the motel. It rejected a proposed finding that appellants had no knowledge of the acceleration clause. It also rejected a proposed finding that appellants and the Leaders rescinded the exchange agreement.

The court also found that it was not the intention of the parties—respondent and appellants—that payments to respondent would be made only out of moneys received by appellants under the exchange agreement, but that the $30,000 note was to be security to respondent for the payment of his commission. This "finding" is based solely upon the court's construction of the language of the agreement, as the court excluded evidence of conversations between appellants and respondent, offered by appellants to show that the intention was that respondent was to be paid only from the monthly payments on that note.

The judgment is for $7,250, payable at the rate of $100 per month, commencing the first day of January, 1958. No objection is made to the form of this judgment.

(1) *The commission was not payable only from sums to be received from the purchasers.*

Under this point, appellants urge that the court erred in excluding their proffered parol evidence. ■■■ They also claim that the agreement itself shows that the parties intended that respondent was to be paid only from the monthly payments on the "note from Leader." We think not. The agreement expressly provides that the commission is "to become due on the execution of this agreement by all parties hereto." It had been so executed on November 4. The handwritten sentence defines what is thus to become due—a "personal note with the note from Leader as collateral security, payable @ $100 per mo. wit [*sic*] int. @ 6% from 1/1/58. Payments to begin 2/1/58." A personal note of appellants, secured by the other note as collateral, is inconsistent with the claim that appellants would not be obliged to pay except as the monthly payments ($450 per month) on the note to be given as collateral were received by them.

■■■ "Collateral security" has a well established meaning. It is "a separate obligation attached to another contract to guarantee its performance." (*Johnson* v. *National Surety Co.,* 118 Cal.App. 227, 229 [5 P.2d 39].) It "implies the transfer to the creditor of an interest in some property, or lien on property, or obligation which furnishes a security in addition to

the responsibility of the debtor . . ." (*Anglo-California Trust Co.* v. *Oakland Rys.*, 193 Cal. 451, 465 [225 P. 452].)
So here, the responsibility of appellants would be on the "personal note" to be given by them to respondent; the collateral security, the "Leader" note, would be in addition to that responsibility, and held by respondent to secure the performance by appellants of that responsibility. There is nothing in the language used to support or even suggest that the respondent was to look solely to the Leader note for his money, or that that note, instead of securing appellants' performance under their own note, would be in effect, a substitute for, and thus wipe out, their personal responsibility.

Parol evidence is admissible to explain an ambiguity, but not to create one, and certainly not to contradict the plain meaning of the language used, which is really the purpose for which it was offered by appellants in this case. (*Cf. Buffalo Arms, Inc.* v. *Remler Co.*, 179 Cal.App.2d 700, 709-710 [4 Cal.Rptr. 103], and cases there cited.)

(2) *Rescission of the exchange agreement did not terminate respondent's rights.*

For the purpose of this discussion, we will assume that the court should have made a finding, as requested by appellants, as to whether the Leaders and appellants rescinded, and that if it had, the finding would be that they did. This assumption is made because it is most favorable to appellants. (*Cf.* Code Civ. Proc., § 634.) It does not follow that such rescission terminated respondent's rights.

Here, the right to a commission is not conditioned upon performance of the exchange agreement. On the contrary, the appellants expressly agreed that the commission was to become due "on the execution of this agreement by all parties hereto," a condition that was completely fulfilled. Under these circumstances, a subsequent rescission by the Leaders and appellants could not defeat respondent's right as against appellants. (*Jauman* v. *McCusick*, 166 Cal. 517 [137 P. 254]; and *cf. Mann* v. *Mueller*, 140 Cal.App.2d 481 [295 P.2d 421]; *Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875 [306 P.2d 783].) *Jauman*, a decision by Mr. Justice Sloss, is closely in point. There, an exchange agreement was entered into, and the portion signed by the defendant read ". . . I . . . agree to pay [plaintiffs] $1850 commission for their services in securing the agreement for said exchange." (P. 520 [166 Cal.].) Afterwards, the two parties to the exchange could

not agree as to responsibility for certain taxes, and the deal was abandoned. In affirming a judgment for the brokers, the court said: "As a part of the transaction she agreed specifically 'to pay V. E. Stockwell & Company one thousand eight hundred and fifty dollars commission for their services *in securing the agreement for said exchange.'* They had then secured such agreement and had performed the exact service for which the defendant undertook to pay them a commission. The performance of their obligation was complete and their rights could not be affected by the subsequent failure of either of the parties to carry out the agreement. She did not, as did the owner in the cases cited by her, agree to pay a commission for the securing of a purchaser ready and willing to purchase the land. She agreed to pay a commission for securing a specific agreement. Such agreement having been secured, she was liable under the precise terms of her contract." (P. 522 of 166 Cal.)

Appellants rely upon Civil Code, section 1559, dealing with third party beneficiary contracts, and upon cases holding or saying that, where the parties to such a contract rescind before the third party beneficiary takes steps to enforce the contract, his rights under the contract are terminated. This is the correct rule where a true third party beneficiary contract is involved. But we do not have such a contract here. Appellants, when they signed the acceptance, in effect made two contracts, one with the Leaders, for the exchange, and one with respondent, to pay for his services in procuring the exchange agreement for them. (*Stewart* v. *Bowie*, 43 Cal.App. 751, 755 [185 P. 868].) The Leaders did not agree to pay respondent anything. In the typical credit-beneficiary situation, A, who owes an obligation to C, his creditor, makes a contract with B, who owes C nothing, whereby, for a consideration moving from A to B, B agrees to pay A's obligation to C. In such a situation, C is given a direct right of action against B (Civ. Code, § 1559), but that right of action can be defeated by a rescission by A and B occurring before C undertakes to enforce his right. Such a rescission, however, will not defeat C's original rights against A. He was A's creditor before and he remains A's creditor. Here, respondent, in relation to appellants, is the creditor; he is not a "third party beneficiary" at all. Having fully performed, he can enforce his contract with appellants, whether they perform their contract with the Leaders or not. Nor does it matter that respondent

did not sign the exchange agreement. Respondent had fully performed. The acceptance, signed by appellants, is a sufficient memorandum, signed by the party to be charged, to permit respondent to enforce an *oral* contract to pay his commission. (1 Witkin, Summary of California Law [7th ed.], Contracts, § 96, p. 97 and cases there cited.)

Unfortunately, certain decisions of our courts have used the third party beneficiary rationale in dealing with similar contracts, sometimes in situations where, as here, a true third party beneficiary was not involved. The first such case appears to be *Stanton* v. *Carnahan*, 15 Cal.App. 527 [115 P. 339], in which both parties agreed to pay the broker a commission, and the party sued was not the one who had employed the broker, so that there the rationale was apt, while here it is not. Later cases, however, have failed to note this difference. (*Lundeen* v. *Nowlin*, 20 Cal.App. 415 [129 P. 474] ; *K. Lundeen Corp.* v. *Barlow*, 120 Cal.App. 391 [7 P.2d 1102] ; *Mitchell* v. *Johnston*, 140 Cal.App.2d Supp. 982 [298 P.2d 170].)

In certain of the cases relied on by appellants, the commission was not to be paid until the contract procured by the broker was actually carried out, which is not the type of case now before this court. (*Stanton* v. *Carnahan, supra,* 15 Cal. App. 527 ; *Jennings* v. *Jordan,* 31 Cal.App. 335 [160 P. 576] ; *Brion* v. *Cahill,* 34 Cal.App. 258 [165 P. 704] ; *Sanstrum* v. *Gonser,* 140 Cal.App.2d 732 [295 P.2d 532] ; *Ira Garson Realty Co.* v. *Brown,* 180 Cal.App.2d 615 [4 Cal.Rptr. 734].) *Cannon* v. *Selmser,* 85 Cal.App. 783 [260 P. 332], is similar, in that the commission was expressly made payable out of the purchaser's first payment, which was never made. In *Stanton, Jennings,* and *Brion* it also appeared that the party sued by the broker was not the party who had employed him, so that the obligation of the party sued to pay the broker a commission depended entirely upon his agreement with the other party to the sale or exchange. That is not the present case. *Jennings* is the most often cited case, and it expressly distinguishes *Jauman, supra.*

In one case, *Houghton* v. *Kuehnrich,* 46 Cal.App. 469 [189 P. 457], the defendant reserved the right to cancel the deal if not satisfied with the other party's property, and did so. His agreement to pay the broker was held to have terminated along with the rest of the contract, on the authority of *Jennings* and *Brion, supra.* In another case, *K. Lundeen Corp.* v. *Barlow, supra,* 120 Cal.App. 391, the defendant rescinded

the exchange agreement for fraud of the other party, and it was held that the broker's right to a commission fell with the rescission. It is not clear from the opinion whether the defendant had previously authorized the broker to find a purchaser or not. In any event, the fraud of the purchaser procured by the broker was a sufficient ground for denying the broker a commission. (*Cf. Wright* v. *Buzzine,* 180 Cal.App.2d 426 [4 Cal.Rptr. 482].) In *Lawrence Block Co.* v. *Palston,* 123 Cal. App.2d 300 [266 P.2d 856], the broker never procured a binding contract; it was subject to a condition that was never fulfilled.

In the case at bar, not only is the agreement of appellants that the commission would become due upon the execution of the agreement, but there is also an express provision that in the event that there is an "error" in the title of either party, that cannot be corrected, the agreement "shall be null and void, except as to the payment of commissions . . ." So it can hardly be contended that this is a case in which it was contemplated that respondent would get his commission only if the agreement were performed.

In each case, the broker's rights will depend upon the language of the contract in which they are set forth. In the case now before us, that language makes it clear that the commission was fully earned when the agreement of exchange was executed.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.